**Margaret MacKnight, Appellee, v. Federal Life Insurance Company, Appellant.**

**Gen. No. 37,768.**

242

Opinion filed December 31, 1934.

JEROME F. KUTAK, of Chicago, for appellant.

MUSGRAVE, OPPENHEIM, PRICE & EWINS, of Chicago, for appellee.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

July 9, 1928, the defendant, Federal Life Insurance Company, issued its policy of insurance to William

MacKnight in which plaintiff, Margaret MacKnight, his wife, was the beneficiary. November 27, 1932, William MacKnight died as the result of freezing and plaintiff brought this suit to recover the amount she claimed to be due her under the policy. There was a verdict and judgment in plaintiff's favor for $2,800, and defendant appeals.

From the evidence, which is undisputed, it appears that November 27, 1932, the insured, William Mac-Knight, his two sons, and another man, went duck hunting in the marshes near the City of Hurlock, Maryland. The four drove in an automobile from their home in Hurlock to the edge of the marsh, which took about an hour. They arrived at the marsh about 1:30 o'clock in the afternoon; walked from the automobile about a half mile to a rowboat, where Mac-Knight and his sons left the other man, got into the boat and rowed about a mile upstream; here they anchored the boat (which was the usual type of rowboat built for three men but large enough to carry four), got out and hunted around until about an hour before sunset, when they started back to the boat. On the way back the two sons got lost and hunted around for the boat until nearly dark when they saw a small fire across the marsh; they went to the fire and there met their father; all three then got in the rowboat and started down the stream to the place where they had left their automobile; "all of a sudden we saw the boat was filling with water and sinking"; they all jumped out into the water, pulled the boat to shore and left it. The stream at this place was about 15 feet wide and four or five feet deep; the weather had suddenly turned very cold and was growing colder; they walked around through the marsh endeavoring to find the automobile, but became lost; they then became so cold and tired that they lay down. A rescue party found them between one

and two o'clock in the morning but was unable to rescue them and went back for help; when they later came back the father and one of the boys were dead.

A preliminary question is raised by the defendant as to the sufficiency of plaintiff's statement of claim, the objection apparently being that it was improper to attach a copy of the insurance policy to plaintiff's statement of claim as an exhibit, this not being permitted under the common law system of pleading. There is no merit in this contention. This case was in the municipal court of Chicago where this method of pleading is permitted, *Plew v. Board*, 274 Ill. 232; and it is now permitted in this State under the new Civil Practice Act, section 36.

The defendant contends that no recovery can be had under the policy because (1) the death of William MacKnight did not result solely through accidental means, (2) because he was not riding "in a vehicle at the time of the accident," (3) because the vehicle was not wrecked or disabled, (4) because there was no "causal relationship between the wrecking or being thrown therefrom, and the death of the insured," and (5) because notice of death was not given immediately; and that all of these must be made to appear before there is any liability under the policy.

(1) Did the death of William MacKnight result solely through accidental means? The policy insured William MacKnight "against Death or Disability resulting directly and independently of all other causes, from bodily injuries sustained through EXTERNAL, VIOLENT and ACCIDENTAL MEANS." The undisputed evidence is that the insured came to his death by freezing, under the facts as disclosed by the evidence hereinbefore referred to. We think the death of William MacKnight was caused by accidental means independently of other causes, within the meaning of the policy. *Federal Life Ins. Co. v. White* (Tex. Civ. App.), 23

S. W. (2d) 832. In that case a policy identical with the one before us was involved. There the insured started on a 30-mile journey in his automobile; during the trip the automobile became disabled and the assured abandoned the car and started out on foot; he was overcome by exposure to cold, with death resulting from freezing, and it was held that the death resulted accidentally and independently of all other causes, within the meaning of the policy.

(2) Was the rowboat in question a vehicle within the meaning of the policy? Counsel for defendant contends that "The insured must be riding in a *vehicle* at the time of the accident," and that the policy includes automobiles or other motor-driven or horse-drawn vehicles and not boats—that it is intended to insure against accidents occurring by means of conveyances used on land only, and does not apply to boats. The material provision of the policy provides that the insurance company will pay $2,800 in case the death of the insured results from "the wrecking or disablement of any vehicle or car operated by any private carrier or private person in which the Insured is riding or by being accidentally thrown therefrom." And later, under the "General Provisions," the policy provides the insurance does not cover "Death or loss while in, on or operating or handling any submarine." We think the word "vehicle" applies to any conveyance whether on land or on water or in the air, and that a rowboat is a vehicle within the meaning of the policy. And if it should be considered that the word "vehicle" as used is ambiguous or uncertain in meaning, the policy having been prepared by the insurance company, under a well established rule of law, will be construed most strongly against the insurance company.

(3) Was the vehicle wrecked or disabled? Counsel for the defendant contends the boat was not wrecked

or disabled because the surviving son of the deceased testified that the boat was not leaking; that they could find no reason for the boat sinking; that the witness also testified the boat "went down so quick that we could not find any reason for its sinking. . . . We were running along until all of a sudden we saw the boat was filling with water and sinking." The evidence shows that the father and sons then jumped out of the boat to save themselves, and we think it obvious that the boat was disabled within the meaning of the policy.

(4) From what we have said, and what was said in *Federal Life Ins. Co. v. White, supra* (Tex. Civ. App.), 23 S. W. (2d) 832, we think there was a causal relation between the sinking of the boat and the death of the insured. The facts in the *White* case were the same in principle as the facts in the case before us.

(5) Was the notice given the defendant of the death of William MacKnight a sufficient compliance with the terms of the policy? The policy provides that "Written notice of injury on which claim may be based must be given to the Company within twenty days after the date of the accident causing such injury. In event of accidental death immediate notice thereof must be given to the Company. . . . Failure to give notice within the time provided in this policy shall not invalidate any claim if it shall be shown not to have been reasonably possible to give such notice and that notice was given as soon as was reasonably possible." The defendant contends that this provision of the policy was not complied with because the insured died November 27, 1932, while the defendant was not notified of this fact until December 7, 1932, or 10 days after the insured's death and burial. The evidence shows that the policy was kept by the insured in a safe at the place where he was employed. Plaintiff, his wife, knew of the existence of the policy. The evidence

further shows that the safe in which the policy was kept could be opened only by the deceased's employers, who were at another town. The safe was difficult to open and an expert had to be called from Philadelphia to open it, but he was unable to do so. It was then found necessary to break the lock. In these circumstances, we think the notice was given as soon as it was reasonably possible to do so.

The judgment of the municipal court of Chicago is affirmed.

*Judgment affirmed.*

McSURELY and MATCHETT, JJ., concur.