Marshall BEARCE, Administrator of the Estate of Thomas Bearce, Deceased, Plaintiff,

v.

UNITED STATES of America and its subordinate agencies, The United States Coast Guard and the United States Corps of Engineers, Defendants.

No. 76 C 1163.

United States District Court, N. D. Illinois, E. D.

June 15, 1977.

Robert S. Minetz, Malato, Stein & Grossman, Chicago, Ill., for plaintiff.

Samuel K. Skinner, U.S. Atty., Chicago, Ill., Thomas L. Jones, Admiralty and Shipping, U.S. Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM

LEIGHTON, District Judge.

This is a complaint filed under statutes that authorize suits for redress of torts by government employees, suits in admiralty, and actions for death on the high seas.[1] In three counts, Marshall Bearce as an administrator of an estate, sues the United States, its agencies the Coast Guard and Corps of Engineers, to recover for the death of Thomas Bearce. The cause is before the court on a motion in limine by which plaintiff asks, in advance of trial, for a ruling that a toxicologist's report, prepared in accordance with Illinois law, is not admissible in evidence in the trial of this case. The material facts are not in dispute.

### I.

On May 10, 1975, Thomas Bearce was killed when a motorboat he was operating struck a breakwater on Lake Michigan near the Oak Street Beach in Chicago. It was a requirement of the Illinois Coroner's Act, Ill.Rev.Stat., ch. 31, § 10(e)(1975) that

> In cases of accidental death involving a motor vehicle in which the decedent was

---

1. Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671, *et seq.;* Suits in Admiralty Act, 46 U.S.C. §§ 741 *et seq.;* Death on the High Seas Act, 46 U.S.C. §§ 761 *et seq.*

(1) the operator or a suspected operator of a motor vehicle, or (2) a pedestrian 16 years of age or older, the coroner shall require that a blood specimen of at least 10cc., and if medically possible a urine specimen of at least 30cc. or as much as possible up to 30cc., be withdrawn from the body of the decedent within 6 hours of the accident causing his death, by such physician as has been designated in accordance with Section 10.1, or by a qualified person at the direction of such physician. If the county does not maintain laboratory facilities for making such analysis, the blood and urine so drawn shall be sent to the Department of Public Health for analysis of the alcohol, carbon monoxide, and dangerous or narcotic drug content of such blood and urine specimens. Each specimen submitted shall be accompanied by pertinent information concerning the decedent upon a form prescribed by such Department. If the analysis is performed in county laboratory facilities, the coroner shall forward the results of each analysis and pertinent information concerning the decedent to the Department of Public Health upon a form prescribed by such Department. The coroner causing the blood and urine to be withdrawn shall be notified of the results of any analysis made by the Department of Public Health and the Department of Public Health shall keep a record of the results of all such examinations to be used for statistical purposes. The results of the statistical examinations referred to in this paragraph shall not be admissible in evidence in any action of any kind in any court or before any tribunal board, agency or person, but shall be used only for statistical purposes. The cumulative results of the examinations, without identifying the individuals involved, shall be disseminated and made public by the Department of Public Health.

Two days after this tragedy, the Coroner of Cook County, pursuant to this statute, delivered to a staff toxicologist a specimen which on analysis showed that at the time of his death Thomas Bearce had 99.0mg%

ethanol in his blood. Relying on Illinois statute which provides, in part, that the results of a blood analysis made by a coroner are not " . . . admissible in evidence in any action of any kind in any court or before any tribunal, board, agency or person . . .," plaintiff argues that principles of comity by which a federal court will defer to the law of the state where it sits; and, the federal rules of evidence, require a pretrial ruling that the toxicologist's report concerning the alcohol content of Thomas Bearce's blood is not admissible as evidence in this case.

Defendants oppose the motion with the argument that plaintiff's reliance on the statute in question is misplaced because Thomas Bearce was killed in an accident involving a motorboat; the Illinois Coroner's Act applies to a decedent who was the operator or suspected operator of a motor vehicle; and that even if plaintiff is correct about applicability of the statute, evidence which showed the presence of alcohol in Thomas Bearce's blood at the time of his death is relevant to the issues of this case and thus admissible under the federal rules of evidence.

These arguments present two issues. (1) Whether, within the meaning of the Illinois Coroner's Act, a motorboat is included in the term "motor vehicle." (2) Whether this court, in advance of trial, should defer to Illinois law and rule in limine that the toxicologist's report showing the presence of alcohol in Thomas Bearce's blood at the time of his death is not admissible as evidence in the trial of this case.

II.

(1)

Resolution of the first issue requires construction of the Illinois Coroner's Act in order to determine whether the legislature intended to include a motorboat in the term "motor vehicle." The statute does not define the term; therefore, we must look to see if the state's highest court has ever done so. A federal court is bound by the laws of the state where it sits as they

are interpreted by the judges of that state. *Berghoff Restaurant Co., Inc. v. Lewis W. Berghoff, Inc.,* 499 F.2d 1183 (7th Cir. 1974); *Salazar v. Rodriguez,* 371 F.2d 726 (10th Cir. 1967). However, where on a particular question there is no definitive ruling by the state's highest court, a federal judge must determine, as best he can, how that court would rule were it asked to do so. *Robinson v. United States,* 518 F.2d 1105 (9th Cir. 1975); see *Southern Railway Co. v. State Farm Mutual Auto. Ins. Co.,* 477 F.2d 49 (5th Cir. 1973). It is said that this process is one by which the federal judge makes an informed prophesy on the subject of state law. *Wright v. Walling,* 159 F.Supp. 190 (W.D.Ark.1958). In such a case, the federal court must have regard for any persuasive data available, such as compelling inferences, logical implications from other related adjudications, and considered pronouncements. *Yoder v. Nu-Enamel Corporation,* 117 F.2d 488 (8th Cir. 1941).

Here, the Supreme Court of Illinois has never been asked to define the term "motor vehicle" within the context of the statute in question. In fact, there is no decision of any Illinois reviewing court on the issue presented by plaintiff's motion in limine. However, the Illinois Code governing licensing and regulations of vehicular transportation, states, in rather broad language, that a motor vehicle is "[e]very vehicle which is self-propelled . . . ." And for the purposes of the code, motor vehicles include those ". . . which are designed for the carrying of not more than [ten] 10 persons." Ill.Rev.Stat., ch. 95½, § 1–146 (1975). This definition, one which proper context would include a boat, is consistent with Webster's who tells us that a vehicle is ". . . a means of carrying or transporting something: conveyance . . . a carrier of goods or passengers . . . ." Webster's Third New International Dictionary 2538 (16th ed. 1971). And it agrees with what courts other than those of Illinois have said on the subject. See *Mellon v. Minneapolis, St. P. & S.S.M. Ry. Co.,* 56 App.D.C. 160, 11 F.2d 332, 334 (1926); *Wright v. Sniffin,* 80 Cal.App.2d 358, 181 P.2d 675, 677 (1947).

The term "motor vehicle" suggests the idea of self propulsion. See *Gibbs v. Mayo,* 81 So.2d 739, 740 (Fla.1955). Its use in the Illinois Coroner's Act discloses the intent of the legislature to create a scheme by which statistical data is gathered concerning vehicular accidental deaths, coinciding with the presence of alcohol, carbon monoxide, dangerous or narcotic drugs in the blood or urine of the person killed. Ill.Rev.Stat., ch. 31, § 10(e) (1975). These provisions were designed to assist the Department of Public Health in this gathering of statistical data as a matter of public policy, one enforced by a legislative grant of absolute immunity from civil or criminal liability to any person who, pursuant to the Act, draws blood or obtains urine from the body of any person who is killed in an accident involving a motor vehicle. *Swank v. Bertuca,* 41 Ill.App.3d 229, 353 N.E.2d 415 (1976). It is obvious that this declared state public policy will be promoted, in today's wide use of waterways for commercial and recreational purposes in Illinois, by a definition of the term "motor vehicle" that would include a motorboat. This breadth of definition was adopted in *MacKnight v. Federal Life Insurance Co.,* 278 Ill.App. 421 (1st Dist. 1934), where the Illinois Appellate Court was asked to construe the limitations in an insurance policy under which a claim had been made. It was contended that the policy applied only if, at the time of the accident in question, the insured was riding in a vehicle; that the coverage included automobiles or other motor-driven or horse-drawn vehicles, but not boats; and that the policy was intended to insure against accidents occurring by means of conveyances used on land only, but did not apply to boats. The court, however, held that ". . . the word 'vehicle' applies to any conveyance whether on land or on water or in the air . . . ." 278 Ill.App. 241 at 245.

Relying on what this important Illinois court has said, on other but analogous data, and bearing in mind that today, traffic over water often produces accidental deaths in which alcohol, carbon monoxide or drugs

may be present in the blood or urine of the dead person, this court concludes that within the meaning of the Illinois Coroner's Act, the legislature intended to include a motorboat in the term "motor vehicle"; and that reviewing courts of Illinois, if presented with the same question, would reach the same conclusion. Therefore, defendants' argument that plaintiff's reliance on the statute in question is misplaced must be rejected.

### (2)

The second issue involves application of a principle of testimonial proof. Rule 601, Federal Rules of Evidence, governs the competency of witnesses in federal courts and provides that ". . . in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the competency of a witness shall be determined in accordance with State law." " 'Competency', in the law of evidence, is the presence of those characteristics, or the absence of those disabilities, which render a witness legally fit and qualified to give testimony in a court of justice;—applied, in the same sense, to documents or other written evidence." *United States v. De Lucia*, 256 F.2d 487, 491–492 (7th Cir. 1958). Concerning competency of the results of any analysis made of blood or urine taken from the body of a vehicular accidental death victim in Illinois, the Illinois Coroner's Act supplies the rule of decision by providing that such results are not admissible as ". . . evidence in any action of any kind in any court or before any tribunal, board, agency or person, . . . ." Ill. Rev.Stat., ch. 31, § 10(e) (1975). The rule embodies a clear, unequivocal public policy which declares that no analysis of any blood or urine sample, obtained pursuant to the Act, is admissible in any court on the claim of anyone. *Swank v. Bertuca*, 41 Ill.App.3d 229, 353 N.E.2d 415 (1976). In other words, by Illinois law, no witness is competent to testify on the subject because analysis of such blood or urine shall be only for statistical purposes. Ill.Rev.Stat., ch. 31, § 10(e) (1975).

This court will defer to this clear and unequivocal state policy and recognize the witness and evidence incompetency declared by the legislature in the provisions of the Illinois Coroner's Act. *Herman Brothers Pet Supply Inc. v. N.L.R.B.*, 360 F.2d 176 (6th Cir. 1966); see *In re Valecia Condensed Milk Co.*, 240 F. 310 (7th Cir. 1917); compare *Just v. Chambers*, 312 U.S. 383, 61 S.Ct. 687, 85 L.Ed. 903 (1941); *St. Hilaire Moye v. Henderson*, 496 F.2d 973 (8th Cir. 1974) *cert. denied* 419 U.S. 884, 95 S.Ct. 151, 42 L.Ed.2d 125; *Bonhiver v. Rotenberg, Schwartzman & Richards*, 461 F.2d 925 (7th Cir. 1972); *Fleishour v. United States*, 365 F.2d 126 (7th Cir. 1966), *cert. denied*, 385 U.S. 987, 87 S.Ct. 597, 17 L.Ed.2d 448. Accordingly, plaintiff's motion in limine will be sustained; and an order will be entered ruling, in advance of trial, that the toxicologist's report showing the presence of alcohol in Thomas Bearce's blood at the time of his death will not be admitted as evidence in the trial of this case.

*So ordered.*