## In re AIR CRASH DISASTER NEAR CHICAGO, ILLINOIS ON MAY 25, 1979

**This Document Relates to,**

**Syed HAIDER, as Administrator of the Estate of Victoria Chen Haider, Deceased, Plaintiff,**

v.

**McDONNELL DOUGLAS CORPORATION, a corporation; and American Airlines, Inc., a corporation, Defendants.**

MDL 391.
No. 79 C 2444.

United States District Court,
N. D. Illinois, E. D.

Nov. 17, 1981.

John J. Kennelly, Chicago, Ill., for plaintiff Syed Haider.

Norman J. Barry and Christoper G. Walsh, Jr., Rothschild, Barry & Myers, Chicago, Ill., for defendant McDonnell Douglas Corp.

Thomas D. Allen, Robert E. Haley, Elise E. Singer, Wildman, Harrold, Allen & Dixon, Chicago, Ill., for defendant American Airlines, Inc.

William P. Butler and C. Kevin McCabe, Lord, Bissell & Brooke, Chicago, Ill., for Motor Vehicle Mfrs. Ass'n of the United States, Inc. (amicus curiae).

ROBSON and WILL, District Judges.

### MEMORANDUM AND ORDER

Victoria Chen Haider, a resident of Illinois, was one of 273 people who died in the crash of an airplane, built by McDonnell Douglas Corporation (MDC), and owned and operated by American Airlines (American), outside Chicago on May 25, 1979. The wrongful death action brought by her husband (who is still a resident of Illinois), as the administrator of her estate, was consolidated with approximately 150 others for pretrial proceedings in this Court. Federal jurisdiction is based upon diversity of citizenship under 28 U.S.C. § 1332.

Defendants seek to introduce evidence as to the portion of the decedent's past earnings which were subject to taxation, and evidence as to the percentage of any future earnings which would have been paid as taxes had the decedent lived. Defendants also seek to have the jury instructed that:

> If you decide to award any damages to the plaintiff, your award will be exempt from any income taxes; therefore, in fixing the amount of your award, you should not be concerned about or consider the effect of taxes on the award.[1]

---

1. The Internal Revenue Code's treatment of damages for wrongful death is more complex than MDC's requested instruction states it to be. Only the principle of a damages award is

Plaintiff Syed Haider opposes both the introduction of this evidence and the giving of instructions as to the tax status of damages awards. Both plaintiff and defendant MDC have filed motions *in limine* seeking a determination of these issues. For the reasons hereinafter stated, we grant plaintiff's motion and deny defendant's motion.[2]

We note preliminarily that the questions whether evidence of the effect of taxation upon earnings is admissible, and whether the jury should be instructed as to the tax status of any award, are separate issues. Nordstrom, *Income Taxes and Personal Injury Awards*, 19 Ohio St. L.J. 212, 219–21 (1958). But in the context of an action whose federal jurisdiction rests upon diversity of citizenship, our inquiry is limited to two issues: (1) whether the determination of the issues raised in the parties' motions is to be made pursuant to Illinois law or federal law, and (2) whether Illinois law, if it applies, would lead to a different result than would federal law. Because there would be no need to determine whether Illinois or federal law governs the resolution of the issues raised in these motions if application of either Illinois law or federal law led to the same result, we address first the question whether Illinois law and federal law would resolve these issues differently.

## I.

Federal law, if applicable to an action whose jurisdiction rests on diversity of citizenship, would require that we admit evidence of the effect of taxation upon the decedent's estimated capacity to contribute to the support of her family. The admissibility of this evidence is governed by the concepts of materiality and relevance. *See* Rules 401–03, Federal Rules of Evidence (FRE). Because "just compensation" under the Illinois Wrongful Death Act[3]—the source of plaintiff's substantive rights in this action—is restricted to the "pecuniary loss" sustained by the decedent's survivors, *Kaiserman v. Bright*, 61 Ill.App.3d 67, 18 Ill.Dec. 108, 377 N.E.2d 261, 263 (1978), evidence of the effect of taxation upon earnings is "of consequence to the determination" of "just compensation." Rule 401, FRE. Defendants correctly state that, because the focus of the Illinois Wrongful Death Act is on the decedent's contributions to her survivors rather than on her earnings, the amount which would have been

free from federal income taxation. Interest earned on the invested principle—a component of "just compensation," given the fact that juries are instructed to reduce awards to present value to account for reasonable investment opportunities—is, however, subject to federal income taxation. 26 U.S.C. § 104(a)(2); Rev.Rul. 54–19, 1954–1 C.B. 179; Rev.Rul. 65–29, 1965–1 C.B. 59. Moreover, in some of these cases, the plaintiff-survivor will have to pay federal taxes on this investment income as a single taxpayer, whereas, had the decedent not died, federal taxes on these earnings would have been paid on a joint-return basis. Because of the different tax rates imposed on the earnings of single and married taxpayers, the investment income from a damages award will be subject to higher taxes than would the same earnings had they accrued to the decedent over the course of a normal life-expectancy. Ward and Olson, *The Economic Impact of Income Tax on Damage Awards*, 17 Trial 47, 48 (No. 8, August, 1981).

2. Plaintiff raised and briefed his motion as one which pertains to *Haider*. American designated its answer to plaintiff's motion and supporting memorandum as pertaining to *Haider* and to two other cases. Finally, MDC designated its cross-motion and memoranda as pertaining to *Haider*, the two cases identified by American, and several other of the cases which have been transferred to this Court for pretrial proceedings. Our focus in this opinion is upon *Haider*, but we regard the effect of this opinion as extending at least to all other cases in which the plaintiff and the decedent are and were domiciliaries of Illinois.

3. Ill.Rev.Stat. ch. 70, § 2 (1979) states, in pertinent part:

Every such action shall be brought by and in the names of the personal representatives of such deceased person, and . . . the amount recovered in every such action shall be for the exclusive benefit of the surviving spouse and next of kin of such deceased person and in every such action the jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death, to the surviving spouse and next of kin of such deceased person.

taken in taxation is relevant to the determination of the portion of her earnings which would have been or could have been contributed to her survivors.

The conclusion that federal law would probably admit evidence of the effect of taxation upon a decedent's earnings, subject to the limitations of Rule 403, receives some support from the Supreme Court's recent decision in *Norfolk & Western Ry. v. Liepelt*, 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980). In *Liepelt*, the Court held that an Illinois state court erred in refusing evidence as to taxation of the decedent's earnings in a wrongful death action brought under the Federal Employers Liability Act (FELA).[4] The Court noted that the FELA, in addition to seeking to " 'create uniformity throughout the Union' with respect to railroads' financial responsibility for injuries to their employees," is compensation oriented. 444 U.S. at 493 and n.5, 100 S.Ct. at 757, *quoting from* H.R.Rep.No. 1386, 60th Cong., 1st Sess. 3 (1908). It reasoned that "after-tax income . . . provides the only realistic measure of [a person's] ability to support [others]," and that a wage earner's income tax is therefore relevant to a determination of the monetary loss suffered by her family when she dies. 444 U.S. at 493–94, 100 S.Ct. at 757–58.

Similarly, it appears that federal law, if applicable, would require that we instruct the jury that under section 104(a)(2) of the Internal Revenue Code, the principle of an award for damages is not taxable. Both defendants argue essentially that *Liepelt*, if applicable to a diversity action, requires giving the requested instruction. American points to the compensatory nature of both the FELA and the Illinois Wrongful Death statute. MDC argues that the instruction is merely cautionary. MDC notes that the giving of cautionary instructions is generally within the discretion of the trial court, *Simineo v. School District No. 16*, 594 F.2d 1353, 1357 (10th Cir. 1979); *Krieger v. Bausch*, 377 F.2d 398, 402 (10th Cir. 1967), but claims that *Liepelt* demonstrates that in certain circumstances cautionary instruc-

tions are mandated when requested by a party. Our reading of *Liepelt*, however, convinces us that the Court did not intend its holding in that case to be read so broadly. *Liepelt* dealt with the narrow realm of actions brought under the FELA, and did not purport to address the issues of the admissibility of evidence and the propriety of instructions, concerning taxation, outside the context of the FELA. *Estate of Spinosa*, 621 F.2d 1154 (1st Cir. 1980); *Croce v. Bromley Corp.*, 623 F.2d 1084 (5th Cir. 1980); *Fenasci v. Travelers Ins. Co.*, 642 F.2d 986 (5th Cir. 1981); *see also Vasina v. Grumman Corp.*, 644 F.2d 112 (2d Cir. 1981). Some clarification of *Liepelt* is provided in *Gulf Offshore Co. v. Mobil Oil Corp.*, —— U.S. ——, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981), an action for personal injuries brought under the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. §§ 1331 *et seq.*, which raised the question whether Louisiana law permits or precludes instructing the jury concerning the taxability of an award but did not present the question whether evidence showing the effect of income taxes on past and future earnings is admissible. The Court noted that the OCSLA, unlike the FELA, explicitly authorizes the adoption of state law to the extent that it is not inconsistent with federal law. The Court noted that *Liepelt* was based on the need for uniformity in FELA actions. The Court stated that *Liepelt*, because the FELA afforded no guidance as to whether juries must be instructed on the status of compensatory damages, had announced a "federal common law rule." 101 S.Ct. at 2879–80. The Court added that Congress, in providing that the OCSLA incorporates applicable state law, " 'specifically rejected national uniformity' as a paramount goal" in the OCSLA. *Id.* at 2880, *quoting Chevron Oil v. Huson*, 404 U.S. 97, 104, 92 S.Ct. 349, 354, 30 L.Ed.2d 296 (1972). The Court remanded *Gulf Offshore* to the Texas Court of Civil Appeals for a determination of whether Louisiana law requires giving an instruction as to the taxability of a damages award, and, if it does not, whether

---

4. 45 U.S.C. §§ 51 *et seq.* (1976).

*Liepelt* displaces the state rule in OCSLA cases.

*Gulf Offshore* indicates that the "federal common law rule" of *Liepelt* is limited to situations similar to those in which it arose. We assume, however, for the sake of argument, that federal law requires giving the instruction in addition to admitting evidence as to taxation, and we proceed to a determination of whether Illinois law provides otherwise.

Neither the Illinois Wrongful Death Act nor the Illinois Pattern Instructions concerning the calculation of damages in wrongful death cases, IPI (Civil) § 31.-01–.03, contains any reference to the use of evidence as to a decedent's after-tax income to establish the pecuniary loss to the decedent's survivors or to the tax treatment accorded damages by the Internal Revenue Code. Before *Liepelt*, Illinois prohibited, in FELA actions brought in state court, both the introduction of evidence on the effect of taxes upon earnings and giving the jury instructions as to the non-taxable nature of compensation for damages. *Hall v. Chicago & N.W.Ry.*, 5 Ill.2d 135, 125 N.E.2d 77 (1955); *Raines v. N.Y. Central R.R.*, 51 Ill.2d 428, 283 N.E.2d 230, *cert. denied*, 409 U.S. 983, 93 S.Ct. 322, 34 L.Ed.2d 247 (1972). Currently, Illinois follows *Liepelt* in FELA actions. *Crabtree v. St. Louis-San Francisco Ry.*, 89 Ill.App.3d 35, 44 Ill.Dec. 113, 411 N.E.2d 19 (1980); *Oltersdorf v. Chesapeake & Ohio Ry.*, 83 Ill.App.3d 457, 38 Ill.Dec. 896, 404 N.E.2d 320 (1980). No Illinois cases, either before or after *Liepelt*, have decided these issues in non-FELA actions. The Illinois Appellate Court determined in a pre-*Liepelt* decision that the defendant had not preserved the evidentiary issue for appeal. *Peluso v. Singer General Precision, Inc.*, 47 Ill.App.3d 842, 8 Ill.Dec. 152, 365 N.E.2d 390 (1977). (The defendants in *Peluso* did not seek jury instructions on the taxation of damage awards.) In *dictum*, the *Peluso* court noted that FELA cases are not controlling where the issue arises under the state Wrongful Death statute. 365 N.E.2d at 399. In a concurring opinion in *Peluso*, Judge Sullivan considered the merits, and would have permitted the defendants to establish the fact that the plaintiff's expert witness did not include income taxes in his estimate of the plaintiff's lost future earnings. 365 N.E.2d at 401–04. In *Yakstis v. William J. Diestelhorst Co.*, 61 Ill. App.3d 833, 19 Ill.Dec. 90, 378 N.E.2d 591 (1978), the Illinois Appellate Court stated that "the [decedent's] tax return was relevant evidence of the economic status of the decedent, and would tend to show the economic loss caused by his death." However, the plaintiff, rather than the defendant, introduced into evidence the decedent's tax return in *Yakstis*. 378 N.E.2d 596.[5] *Yakstis*, of course, was decided before *Liepelt*, yet its brief discussion of the relevance of the decedent's tax return to the economic loss which his survivors suffered as a result of his death does not mention *Hall, Raines*, or any of the other pre-*Liepelt* Illinois cases which held such evidence inadmissible when offered by the defendants.

Neither the Illinois Appellate Court's post-*Liepelt* decisions, nor its opinion in *Yakstis*, nor Judge Sullivan's concurring opinion in *Peluso*, provide much guidance as to whether the Illinois Supreme Court would apply the holdings of *Liepelt* to actions arising under the Wrongful Death Act. In the absence of definitive state authority, a federal court sitting in diversity jurisdiction must endeavor to interpret state law in the manner in which the Supreme Court of the state would interpret it if faced with the same issue. *Huff v. White Motor Corp.*, 565 F.2d 104, 106 (7th Cir. 1977); *Hartford v. Gibbons & Reed Co.*, 617 F.2d 567, 569 (10th Cir. 1980); *Bearce v. United States*, 433 F.Supp. 549, 552 (N.D.Ill. 1977).

5. The plaintiff's reasons for introducing the decedent's tax return into evidence in *Yakstis* are not clear from the Illinois Appellate Court's opinion. The decedent was self-employed as a truck driver. 378 N.E.2d at 593. That his tax return was the only evidence of the decedent's earnings would appear to be a logical inference from the nature of his employment and the defendant's objection to its admission into evidence.

In doing so, the federal court should consider all the data—including compelling inferences, logical implications from other related adjudications, and considered pronouncements—which the highest court of the state would consider. *Huff*, 565 F.2d at 106; *Bearce*, 433 F.Supp. at 552. In the absence of other authority, we take the Illinois Supreme Court's decisions in *Hall* and *Raines, supra*, although overruled by *Liepelt* insofar as they governed FELA actions, as expressing the position of the Illinois courts on these issues in actions arising under the state Wrongful Death statute. Our interpretation of Illinois law on these issues is necessarily somewhat speculative. Indeed, having to rely upon overruled cases as evidence of how another court would likely rule on issues if they arose in a different posture strikes us as only slightly more reliable than predictions of the future arrived at by reading the entrails of sheep. But we believe our interpretation is further supported by the absence of any reference to taxation in the Illinois Pattern Instructions on damages for wrongful death and the uniform practice in the state trial courts. The defendants have not been able to point to a single case in which an Illinois court, in an action brought under the state's Wrongful Death Act, granted what they seek here.

*Estate of Spinosa*, 621 F.2d 1154, 1158 (1st Cir. 1980), presented a similar instance of uncertainty as to whether the applicable state law admitted evidence on the impact that taxes would have on a decedent's future earnings. The First Circuit held in *Spinosa* that in the absence of New Hampshire case law on the issue, the district court's refusal to admit the evidence, relying on the "majority rule" that such evidence is inadmissible, *see* Annot., 63 A.L. R.2d 1393 & updates, was proper.

Although neither federal nor Illinois law is unambiguous as to the issues that the parties raise, the most logical and likely conclusion is that federal law, if free from constraints imposed in diversity jurisdiction, would admit evidence and give an instruction as to taxation and damage awards, while Illinois law precludes both admission of this evidence and the giving of an instruction. We therefore turn to the question of which law we must apply.

## II.

A federal court sitting in diversity should apply the substantive law of the state in which it sits. *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Additionally, Illinois law is to be applied to substantive questions in this litigation when the decedent and the plaintiff were and are domiciliaries of Illinois. *In re Air Crash Disaster Near Chicago*, 644 F.2d 633, 637 (7th Cir. 1981). *Erie* does not, however, require application of state law in matters of evidence and procedure. *Hanna v. Plumer*, 380 U.S. 460, 464–74, 85 S.Ct. 1136, 1140–45, 14 L.Ed.2d 8 (1965).

Defendants argue that evidence and instructions on taxation, rather than pertaining substantively to the measure of damages, are procedural. We do not believe that an analysis based on the "substantive-procedural" dichotomy resolves the question whether we must apply federal or state law. To ask whether an issue is "substantive" or "procedural" disposes of the ultimate question of whether federal or state law applies only when it is clear that the issue is either substantive or procedural. To limit analysis to application of the substantive-procedural dichotomy is not helpful when confronted with "matters, falling within the uncertain area between substance and procedure, [that] are rationally capable of classification as either." *Hanna v. Plumer*, 380 U.S. 460, 472, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8 (1965). Indeed, the Supreme Court has repeatedly recognized that "[t]he line between 'substance' and 'procedure' shifts as the legal context changes. 'Each implies different variables depending upon the particular problem for which it is used.'" *Hanna*, 380 U.S. at 471, 85 S.Ct. at 1144, *quoting Guaranty Trust v. York*, 326 U.S. 99, 108, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079 (1945).

■ In general, the admissibility of evidence and the giving of cautionary instructions are procedural matters and hence the law of the forum applies to them. There is no question that the form in which defendants would have the decedent's financial status established and the manner in which the defendants would have a jury calculate its damages award have procedural aspects. But it is just as logical to view the manner in which this evidence is introduced and the instructions as to the importance that the jury should give this evidence as affecting the measure of damages and hence substantive in nature. Whether we admit or exclude this evidence, and whether we give or do not give this instruction, will materially affect the amount of the jury's award. We do not conclude that defendants' characterization of these issues as "procedural" is necessarily inaccurate, and that these issues are wholly "substantive." The point is that these issues are both substantive *and* procedural, and we see no rational basis for concluding that either of them leans toward one rather than the other label.

■ Instead, our decision that the issues raised by the parties' motions *in limine* are to be resolved by application of Illinois law rests upon the "realization that it would be unfair for the character or result of a litigation materially to differ because the suit had been brought in a federal court." *Hanna*, 380 U.S. at 467, 85 S.Ct. at 1141. That *Erie*'s policies of discouraging forum-shopping and avoiding inequitable administration of the laws serve as a better touchstone than does a simple "substantive-procedural" dichotomy is persuasively demonstrated in the First Circuit's opinion in *Turcotte v. Ford Motor Co.*, 494 F.2d 173 (1974). In *Turcotte*, the court rejected plaintiff's contention that federal law governed the admissibility of the effect of income taxes on earnings in a diversity wrongful death action where the applicable state law permitted consideration of income tax returns. It therefore determined that *Erie* required application of the state law. The court noted that the concern of *Erie* and its progeny was both to discourage forum-shopping and to avoid inequitable administration of the

laws. Therefore, it concluded, application of the law which would be applied in the state court was required.

> [I]f Rhode Island law required evidence of income taxes in computing wrongful death damages, yet the federal district court in Rhode Island barred such evidence in diversity cases, no rational plaintiff who had the choice would ever bring a wrongful death action in the state courts. The difference in wrongful death recoveries between the two forums would be staggering.

*Id.* at 185.

The converse is also true. If Illinois does not admit such evidence, its admission in the federal court, particularly where only state law may be otherwise applied, would promote "inequitable administration of the laws."

We think it important to emphasize what we have not done in ruling upon these motions *in limine*. We have not, as a federal court sitting in diversity, decided whether it would be desirable to admit evidence of the effect of taxation upon earnings or to give some instruction to the jury as to the tax status of compensation for damages or how taxation should affect the calculation of damages. Nor would it be proper for us to do so. *Erie, supra*. The competing policy considerations have been analyzed in detail by various courts and commentators, *see, e. g., Liepelt*, 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980) and 444 U.S. at 498, 100 S.Ct. at 759 (Blackmun, J., dissenting); *Domeracki v. Humble Oil & Refining Co.*, 443 F.2d 1245 (3d Cir.), *cert. denied*, 404 U.S. 883, 92 S.Ct. 212, 30 L.Ed.2d 165 (1971); *McWeeney v. N.Y., N.H. & Hartford R.R.*, 282 F.2d 34 (2d Cir. 1960); *Huddell v. Levin*, 395 F.Supp. 64 (D.N.J.1975); D. Dobbs, Remedies 575–79 (1973); Nordstrom, *Income Taxes And Personal Injury Awards*, 19 Ohio St. L.J. 212 (1958), and we see no reason to add unnecessarily to the girth of some future volume of the Federal Supplement by repeating them here. Under present law, the decision is one either for the Illinois legislature and the Illinois courts or the Congress of the

United States rather than for us. Our decision is limited to a finding that Illinois law and federal law would resolve these issues differently, and that the principles first enunciated in *Erie* require us to apply Illinois law.

We are constrained to observe once again that the result of the application of state law in aviation disaster cases is inevitably to create substantial disparity in the applicable law depending on the particular state or federal court in which the case is filed or tried. The crash here involved is typical. Residents of a number of states and foreign countries were passengers. Their survivors are also residents of a number of jurisdictions, not necessarily the same as the decedents. Cases have been filed in various state and federal courts. The federal cases have all been transferred to us under 28 U.S.C. § 1407. As discovery is completed, if the parties so desire, we have remanded a number of cases to the transferor courts for trial. Those cases originally filed in this district will, of course, remain here. As this opinion indicates, whether evidence and instructions with respect to federal and state income taxes will be permitted depends on the applicable state law. As is obvious, this will result in substantial differences in the damage calculations in the various cases.

We have previously urged the enactment of a federal aviation disaster law which would make uniform the legal principles applicable in aviation disaster cases. It is unjust as well as ludicrous that such issues as the standard of liability (no-fault, comparative negligence, contributory negligence), the measure of damages, whether or not prejudgment interest is an element of damages, whether or not damages for pain and suffering are recoverable, whether or not punitive damages are recoverable, whether or not federal and state income taxes should be considered in determining damages, the applicable statute of limitations and a host of other important issues should vary from case to case arising out of the same disaster depending on the vagaries of the applicable state law.

Even the determination under conflicts of law principles of what is the applicable state law presents complex questions and results in an unnecessary burden on the courts as the earlier opinions of this Court and the court of appeals on the issue of punitive damages demonstrate. We and the court of appeals have also had to consider and determine whether or not prejudgment interest is a proper element of damages and, it is obvious, we and the court of appeals will also have considered the income tax questions dealt with in this opinion. All of the foregoing would be obviated by the enactment of a federal aviation disaster statute. Both the best interests of justice to the affected parties and of a sensible utilization of judicial resources would be served by such a statute.

Plaintiff and both defendants have requested certification under 28 U.S.C. § 1292(b) of our order as to these issues. Section 1292(b) provides for immediate appeal of an otherwise nonappealable interlocutory order which the district court and the court of appeals determine (1) involves a controlling question of law, (2) as to which there is substantial ground for difference of opinion, and (3) that an immediate appeal from the order may materially advance the ultimate termination of the litigation. Certification under section 1292(b) is reserved for exceptional cases, *Seven-Up Co. v. O-So Grape Co.*, 179 F.Supp. 167 (S.D.Ill.1959), and was not intended as a means of expediting review merely because an order involves an important legal question. *Bobolakis v. Compania Panamena Maritima San Gerassimo*, 168 F.Supp. 236, 239 (S.D.N.Y. 1958); *see* 1958 U.S.Code Cong. & Adm. News 5260–61.

We agree that whether evidence on the effect of taxation upon earnings is admissible, and whether the jury must be instructed as to the taxability of damages, in an action in which federal jurisdiction is based upon diversity of citizenship, are issues to which "substantial ground for difference of opinion" exists. Earlier paragraphs of this opinion illustrate that whether Illinois or federal law applies to these issues requires an examination of whether they are more fairly characterized as substantive or procedural. Our conclusion that both labels are apt recognizes that the issues might possibly be characterized as either substantive or

**234**

procedural. We also noted that Illinois law on these issues is uncertain after *Liepelt*.

We also believe that these issues are "controlling issues of law," particularly since the only issue to be tried in all of these cases will be the issue of damages. Any decision on these issues will almost inevitably influence the amount of damages that the jury will award.

Moreover, any early appellate decision will enable at least the judges trying the cases in this district to know how to proceed with respect to evidence and instructions as to the income tax questions. In addition, it will obviate the need to re-try any such case if the Seventh Circuit were ultimately, after a trial, to reverse our decision on these issues. The substantial number of cases affected and the possibility that some will be transferred to other courts for trial increase the advantage of obtaining a final determination of these issues before trial.

We would hope that the court of appeals will expedite its ruling since a number of cases are ready for trial. The parties' motion for certification under 28 U.S.C. § 1292(b) will be granted with a recommendation for expedited consideration.

An order consistent with all of the foregoing will enter.