**In re AIR CRASH DISASTER NEAR CHICAGO, ILLINOIS ON MAY 25, 1979.**

**Appeals of AMERICAN AIRLINES, INC. and McDonnell Douglas Corporation, Defendants-Appellants.**

Nos. 81–3083, 81–3084.

United States Court of Appeals, Seventh Circuit.

Argued May 7, 1982.

Decided Feb. 15, 1983.

Rehearing Denied March 31, 1983.

Thomas D. Allen, Robert E. Haley, Elise E. Singer, Wildman, Harrold, Allen & Dixon, Chicago, Ill., for American Airlines.

Norman J. Barry, Christopher G. Walsh, Rothchild, Barry & Meyers, Chicago, Ill., for McDonnell Douglas Corp.

John J. Kennelly, David A. Novoselsky, Chicago, Ill., for appellee.

Before COFFEY, Circuit Judge, SWYGERT, Senior Circuit Judge, and TEMPLAR, Senior District Judge.*

SWYGERT, Senior Circuit Judge.

This diversity case involves the wrongful death actions filed by the survivors of certain victims of the crash near Chicago on May 25, 1979, of a DC–10 aircraft manufactured by defendant McDonnell Douglas Corporation and owned by defendant American Airlines. Many of these actions, either filed in or removed to federal court, were consolidated for pretrial proceedings in the United States District Court for the Northern District of Illinois by an order of the Judicial Panel on Multidistrict Litigation. *In re Air Crash Disaster*, 476 F.Supp. 445, 449 (Jud.Pan.Mult.Lit.1979). This interlocutory appeal from the district court's ruling on the parties' motions *in limine* raises two issues: first, whether a federal court sitting in diversity and applying the Illinois Wrongful Death Act,[1] *see In re Air Crash*

---

\* The Honorable George Templar, United States Senior District Judge for the District of Kansas, sitting by designation.

1. Ill.Rev.Stat. ch. 70, ¶¶ 1–2.2 (1981). Section 2 of the Act provides in part:

   Every [wrongful death] action shall be brought by and in the names of the personal representatives of such deceased person, and, except as otherwise hereinafter provided, the amount recovered in every such action shall be for the exclusive benefit of the surviving

*Disaster,* 644 F.2d 633, 637 (7th Cir.1981), may admit evidence of the income tax liability the decedent would have incurred on the earnings lost because of premature death, as an aid to accurate computation of the survivor's loss; and second, whether the court may instruct the jury that whatever award it makes will not be subject to federal income tax in the hands of the survivor.[2] The district court held that under the principles of *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), it was bound to apply state law, and that Illinois courts would reject both the evidence and the jury instruction. *In re Air Crash Disaster,* 526 F.Supp. 226 (N.D.Ill. 1981). Because we hold that state and federal law do not differ on the evidence issue, we reverse that portion of the judgment. On the jury instruction issue, we reverse because *Erie* is inapplicable.

▆ It is clear that in cases involving federal substantive law the evidence of "lost taxes" would be admissible and the jury instruction on the nontaxability of the award would be proper, in appropriate circumstances. In *Norfolk & Western Railway v. Liepelt,* 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980), the Supreme Court held that in cases brought under the Federal Employers' Liability Act ("FELA") even state courts may not prohibit the admission of such evidence or the use of that instruction, reversing a decision of the Illinois Appellate Court, 62 Ill.App.3d 653, 19 Ill.Dec.

357, 378 N.E.2d 1232 (1978), and overruling the Illinois Supreme Court's practice under FELA, *see Raines v. New York Central Railroad,* 51 Ill.2d 428, 430, 283 N.E.2d 230, 232 (1972); *Hall v. Chicago & North Western Railway,* 5 Ill.2d 135, 149–52, 125 N.E.2d 77, 85–86 (1955). Subsequent cases have adopted *Liepelt's* reasoning in non-FELA federal contexts. *See, e.g., Fanetti v. Hellenic Lines Ltd.,* 678 F.2d 424, 431 (2d Cir.1982) (Longshoremen's and Harbor Workers' Compensation Act); *Austin v. Loftsgaarden,* 675 F.2d 168, 183–84 (8th Cir. 1982) (Securities Act of 1933 and Securities Exchange Act of 1934). *See also Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 498 & n. 17, 101 S.Ct. 2870, 2880 & n. 17, 69 L.Ed.2d 784 (1981). The Supreme Court has left open the question whether it should extend *Liepelt* to diversity cases based on state law. *See id.* 453 U.S. at 487–88, 101 S.Ct. at 2879–80 (reserving the question whether *Liepelt* would control when federal right of action incorporates state law).

The defendants urge that we reverse the district court on both the evidence and the jury instruction issues. On the former, they argue that the existence of the Federal Rules of Evidence, which apply even in diversity cases, *see* Fed.R.Evid. 101, 1101(b), and which declare relevant evidence admissible, *see* Fed.R.Evid. 402,[3] make *Erie* inapplicable; and that Fed.R.Evid. 401, as construed by *Liepelt,* provides the federal definition of relevancy in this kind of case.[4] In

---

spouse and next of kin of such deceased person and in every such action the jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death, to the surviving spouse and next of kin of such deceased person.

2. I.R.C. § 104(a)(2) excludes from gross income "the amount of any damages received (whether by suit or agreement) on account of personal injuries or sickness." This section has been interpreted to include damage awards in wrongful death actions. *See* Rev.Rul. 54–19, 1954–1 C.B. 179; *Norfolk & W. Ry. v. Liepelt,* 444 U.S. 490, 496 & n. 12, 100 S.Ct. 755, 759 & n. 12, 62 L.Ed.2d 689 (1980).

3. Rule 402 provides:
All relevant evidence is admissible, except as otherwise provided by the Constitution of

the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible.

4. Rule 401 provides:
"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
*Liepelt* held that evidence of the income tax that would have been due on lost income is "demonstrably relevant," 444 U.S. at 495, 100 S.Ct. at 758, in a wrongful death action under FELA, whose "measure of recovery is 'the damages ... [that] flow from the deprivation of the pecuniary benefits which the beneficiar-

addition, they argue that state law is identical to federal law on this issue in any case. On the jury instruction issue, they argue that *Hall* and *Raines,* the only Illinois Supreme Court precedents on point, are overruled by *Liepelt,* because they arose under FELA; and that we should predict that the Illinois Supreme Court would now find the reasoning of *Liepelt* persuasive. Alternatively, they argue that because the substance of the proposed instruction relates to the Internal Revenue Code, federal law should govern whether the instruction should be given, even in a diversity case. We address these issues in turn.

### I. Admissibility of Evidence

■ We agree that the Federal Rules of Evidence apply and that as a consequence the district court may not categorically exclude certain kinds of evidence relevant to the determination of damages. If the rules had been promulgated under the Supreme Court's rulemaking power, 28 U.S.C. § 2072 (1976), and did not transgress the limits of that power, this would be true under the reasoning of *Hanna v. Plumer,* 380 U.S. 460, 470–71, 85 S.Ct. 1136, 1143–44, 14 L.Ed.2d 8 (1965). But the Rules of Evidence stand on even firmer footing, for they are statutory. Pub.L. No. 93–595, 88 Stat.1959 (1975). In such a case the Rules of Decision Act, 28 U.S.C. § 1652 (1976), coupled with the supremacy clause of the United States Constitution, demands that the rules apply in federal court, unless Congress exceeded its powers to regulate federal courts in enacting them. The parties have not urged us to find, and we are not prepared to hold, that the rules are unconstitutional. *See* 10 J. Moore & H. Bendix, *Federal Practice* § 57 (2d ed. 1982).

■ Our conclusion is supported by many cases holding that the Federal Rules of Evidence govern the admissibility of evidence in diversity cases. *See, e.g., Rabon v. Automatic Fasteners, Inc.,* 672 F.2d 1231, 1238 n. 14 (5th Cir.1982); *Garwood v. International Paper Co.,* 666 F.2d 217, 223 (5th Cir.1982); *Southern Stone Co. v. Single,* 665 F.2d 698, 701 (5th Cir.1982); *Ballou v. Henri Studios, Inc.,* 656 F.2d 1147, 1153 (5th Cir. 1981); *Croce v. Bromley Corp.,* 623 F.2d 1084, 1094 (5th Cir.1980), *cert. denied,* 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816 (1981); *Johnson v. William C. Ellis & Sons Iron Works, Inc.,* 609 F.2d 820, 821–22 (5th Cir.1980); *Pollard v. Metropolitan Life Insurance Co.,* 598 F.2d 1284, 1286 (3d Cir.), *cert. denied,* 444 U.S. 917, 100 S.Ct. 232, 62 L.Ed.2d 171 (1979); *Gibbs v. State Farm Mutual Insurance Co.,* 544 F.2d 423, 428 n. 2 (9th Cir.1976). *See also Oberst v. International Harvester Co.,* 640 F.2d 863, 867 n. 2 (7th Cir.1980) (Swygert, J., concurring in part and dissenting in part). This result conforms with the practice in federal courts preceding the adoption of the Federal Rules of Evidence. *See* 10 J. Moore & H. Bendix, *Federal Practice* § 400.12[6]–(3) (2d ed. 1982) (in fashioning broad rules of admissibility, federal courts adopted state rules that favored admission but rejected state rules that favored exclusion); 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2405 (1971 & Supp.1982) (same).

■ It does not follow, however that state evidence rules have no bearing on what evidence is admissible in federal court, for the relevance of the evidence is ascertainable only by reference to the substantive law of the state. To the extent that the state evidentiary rule defines what is sought to be proved—here, the measure of damages—it may bind the federal court under *Erie* principles.

If Illinois followed the rule of the majority of state courts that evidence of would-be tax liability is inadmissible for the purpose of proving the amount of damages, *see* cases collected in Annot., 63 A.L.R.3d 1393 (1975 & Supps.); *Louissaint v. Hudson Waterways Corp.,* 111 Misc.2d 122, 125–26, 443 N.Y.S.2d 678, 680–81 (N.Y.Sup.Ct.1981), this subsidiary *Erie* problem would be quite difficult. Courts have supplied several rationales for the exclusionary rule: they have argued that the calculation of net

---

ies might have reasonably received,'" *id.* at 493, 100 S.Ct. at 757, quoting *Michigan Cent.* *R.R. v. Vreeland,* 227 U.S. 59, 70, 33 S.Ct. 192, 196, 57 L.Ed. 417 (1913).

income is too speculative or confusing because of tax rate fluctuations and the difficulty of predicting exclusions and exemptions to which the decedent would have been entitled, *see, e.g., McWeeney v. New York, New Haven & Hartford Railroad,* 282 F.2d 34, 35–36 (2d Cir.), *(en banc), cert. denied,* 364 U.S. 870, 81 S.Ct. 115, 5 L.Ed.2d 93 (1960); that inaccuracies resulting from the projection of gross rather than net income are offset by the undercompensating effects of ignoring inflation and attorney's fees, *see, e.g., id.* at 38; and that by making the award tax exempt, *see supra* note 2, Congress intended to confer a tax benefit that should be reflected in the calculation of the award, *see, e.g., Louissaint v. Hudson Waterways Corp.,* 111 Misc.2d at 128–29, 443 N.Y.S.2d at 682.

The last of these rationales should carry no weight any longer in any court, to the extent that it relies on an interpretation of federal tax law rejected by *Liepelt.* 444 U.S. at 495 n. 10, 100 S.Ct. at 758 n. 10. Nevertheless, the remaining considerations may be so closely linked with the state's view of the measure of damages (which is inseparable from the substantive right of action, *see Chesapeake & Ohio Railway v. Kelly,* 241 U.S. 485, 491, 36 S.Ct. 630, 632, 60 L.Ed. 1117 (1916)) that it binds a federal court sitting in diversity. Several courts have either held or assumed that state law governs admissibility in this situation. *See Vasina v. Grumman Corp.,* 644 F.2d 112, 118 (2d Cir.1981); *Fenasci v. Travelers Insurance Co.,* 642 F.2d 986, 989 (5th Cir.), *cert. denied,* 454 U.S. 1123, 102 S.Ct. 971, 71 L.Ed.2d 110 (1981); *Estate of Spinosa v. International Harvester Co.,* 621 F.2d 1154, 1158–59 (1st Cir.1980); *Huddell v. Levin,* 537 F.2d 726, 742 (3d Cir.1976); *Turcotte v. Ford Motor Co.,* 494 F.2d 173, 185 (1st Cir. 1974). *But see Croce v. Bromley Corp.,* 623 F.2d 1084, 1094 (5th Cir.1980), *cert. denied,* 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816 (1981) (holding that Fed.R.Evid. 403 controls). In addition, many courts have found similar state admissibility rules applicable in diversity cases. *See Budge v. Post,* 643 F.2d 372, 375 (5th Cir.1981) (reduction of award to present value); *Murphy v. Geor-*

*gia-Pacific Corp.,* 628 F.2d 862, 869 (5th Cir.1980) (evidence and jury instruction on inflation); *Bailey v. Southern Pacific Transportation Co.,* 613 F.2d 1385, 1388 (5th Cir.), *cert. denied,* 449 U.S. 836, 101 S.Ct. 109, 66 L.Ed.2d 42 (1980) (evidence of remarriage in mitigation of damages); *Conway v. Chemical Leaman Tank Lines, Inc.,* 540 F.2d 837, 838–39 (5th Cir.1976) (same); *Johnson v. Serra,* 521 F.2d 1289, 1294 (8th Cir.1975) (inflation); *Weakley v. Fischbach & Moore, Inc.,* 515 F.2d 1260, 1267 (5th Cir.1975) (inflation); *Mahoney v. Roper-Wright Manufacturing Co.,* 490 F.2d 229, 232 (7th Cir.1973) (evidence of alternative design feasibility in products liability case); *Chicago, Rock Island & Peoria Railway v. Howell,* 401 F.2d 752, 754 (10th Cir.1968) (competency of circumstantial evidence); *E.L. Cheeney Co. v. Gates,* 346 F.2d 197, 206 (5th Cir.1965) (admissibility of driving convictions to show incompetence).

█ Perhaps the most appealing argument that admissibility rules are tied to the substantive law is the analogy to *Liepelt* itself, which required state courts to apply a federal admissibility rule when adjudicating a federal claim. 444 U.S. at 493, 100 S.Ct. at 757. This argument assumes, however, that *Erie* considerations work in reverse, and that assumption may be unwarranted. *Liepelt* expressly relied on the overwhelming federal interest in uniformity of practice under FELA, and the supremacy clause gives the federal government power to impose even a procedural rule on state courts in these circumstances. *See id.* at 493 n. 5, 100 S.Ct. at 757 n. 5, citing *Brady v. Southern Railway,* 320 U.S. 476, 479, 64 S.Ct. 232, 234, 88 L.Ed. 239 (1943) ("Through the supremacy clause of the Constitution, Art. VI, we are charged with assuring [FELA's] authority in state courts. Only by a uniform federal rule ... may litigants under the federal act receive similar treatment in all states."). *See also* Hill, *Substance and Procedure in State FELA Actions—The Converse of the Erie Problem?,* 17 Ohio St.L.J. 384, 390, 414–15 (1956) (cited with approval in *Liepelt,* 444 U.S. at 493 n. 5, 100 S.Ct. at 757 n. 5); *Liepelt,* 444 U.S. at 503–04, 100

S.Ct. at 762 (Blackmun, J., dissenting) (noting that federal regulation of state procedure is warranted when a federal interest is implicated). If *Liepelt* required the admissibility of tax evidence because of the need for uniform procedure rather than as a substantive FELA requirement, it sheds little light on whether state admissibility rules should be characterized as "procedural" or "substantive" for *Erie* purposes.

■ Moreover, despite the weight of authority and analogy there are good reasons to characterize the majority admissibility rule as procedural and therefore not binding on the federal courts under *Erie.* In adopting the rule that rejects evidence as being too confusing, a state court may merely be making a statement about its own competence and that of its juries to deal with this kind of evidence. But a federal court may assess its own capabilities differently, and logically should not be bound by the state court's self-evaluation. *Cf. Monarch Insurance Co. v. Spach,* 281 F.2d 401, 407 (5th Cir.1960). Indeed, to the extent that the exclusionary rule is based on fear of confusion, it should not apply in federal court because Fed.R.Evid. 403 provides a federal standard for rejecting relevant evidence on the grounds of risk of prejudice, confusion, or waste of time,[5] and, as shown above, the Federal Rules generally displace differing state rules even when the state rule is "outcome-determinative." *Hanna v. Plumer,* 380 U.S. 460, 470–74, 85 S.Ct. 1136, 1143–45, 14 L.Ed.2d 8 (1965). *Liepelt* demonstrates that rule 403 would not categorically bar evidence of taxability. 444 U.S. at 494 & n. 7, 100 S.Ct. at 758 & n. 7.

■ Fortunately, we need not resolve this *Erie* conundrum in this case, because we hold that Illinois' substantive measure of damages is identical to the FELA measure, leaving the district court free to admit all evidence relevant to that measure under Fed.R.Evid. 402.

■ It is true that federal district court determinations of uncertain state law are ordinarily entitled to great weight. *See Buehler Corp. v. Home Insurance Co.,* 495 F.2d 1211, 1214 (7th Cir.1974). They nevertheless remain reviewable as questions of law, *see id.,* and in the circumstances of this case less than the usual deference may be due because the district court confessed its own uncertainty when it certified this interlocutory appeal under 28 U.S.C. § 1292(b) (1976). *See In re Air Crash Disaster,* 526 F.Supp. 226, 233–34 (N.D.Ill.1981).

The Illinois Supreme Court has never decided whether evidence of the hypothetical tax liability of lost earnings is admissible in wrongful death cases. In *Hall v. Chicago & North Western Railway,* 5 Ill.2d 135, 149–50, 125 N.E.2d 77, 85 (1955), a personal injury case under FELA, it noted that the trial court's exclusion of such evidence was in accordance with the majority rule. We are not persuaded by the defendants' argument that this case has no further force because it was overruled by *Liepelt* as to FELA actions; for the reasoning by which the Illinois court reached its conclusion in *Hall* may still represent the view the court would favor on questions of Illinois law. But we find the statement in *Hall* less than compelling for three other reasons.

First, *Hall* was a personal injury case in which the propriety of a statement to the jury on the nontaxability of the award was in issue, and the court's apparent approval of the majority rule on the exclusion of evidence was colored by that posture. The court interpreted federal law to grant a tax benefit to the recipient of the award by making it nontaxable, and feared that this benefit would be negated if the amount of the award were calculated on the basis of lost after-tax income, or if the jury were told that the award was tax free. *See* 5 Ill.2d at 152, 125 N.E.2d at 86 ("[I]f the jury were to mitigate the damages of the plain-

---

**5.** Rule 403 provides:

   Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

tiff by reason of the income tax exemption accorded him, then the very Congressional intent of the income tax law to give the injured party a tax benefit would be nullified."). The conclusion that the award should be calculated on the basis of gross income was particularly inviting in the personal-injury context, because the injured person whose lost earnings were being calculated was the recipient of the award made nontaxable under federal law. The award thus directly represented the lost earnings, making the assumption that both should be tax free easy. This is not true in the wrongful-death context; there, the recipient is the survivor, who is entitled, as we discuss below, to the amount the decedent would have contributed to the survivor's support—that is, the lost income net of taxes, personal consumption, and the like. This difference has caused some courts and commentators to draw a distinction between the use of tax evidence in personal-injury and wrongful-death cases. *See, e.g., Louissaint v. Hudson Waterways Corp.,* 111 Misc.2d at 126–27, 443 N.Y.S.2d at 680–81; Wright, *Damages for Personal Injuries: Foreword,* 19 Ohio St.L.J. 155, 157 (1958).

■ Moreover, the Illinois court's interpretation of federal law was wrong in any case. *Liepelt* interpreted the Internal Revenue Code not to confer an absolute benefit that changes the measure of damages due. 444 U.S. at 496 n. 10, 100 S.Ct. at 758 n. 10. *Liepelt* means, in effect, that the tax law simply makes the recipient no worse off (in terms of taxes, at any rate) than he would have been had the injury not occurred, by excusing the payment of tax on awards from which potential taxes have already been deducted. To the extent that *Hall's* approval of the exclusionary rule was premised on its mistaken interpretation of federal law, it has no force.

■ Finally, *Hall's* approval of the majority rule was dictum, because the only issue before the court was whether the jury could be told that the award was nontaxable. Considered dicta of a state supreme court must be given weight by a federal court in ascertaining state law, *see Gee v.*

*Tenneco, Inc.,* 615 F.2d 857, 861 (9th Cir. 1980), but casual dicta are not entitled to the same degree of deference. *See McKenna v. Ortho Pharmaceutical Corp.,* 622 F.2d 657, 662 (3d Cir.), *cert. denied,* 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980); 1A J. Moore, W. Taggart, A. Vestal & J. Wicker, *Federal Practice* ¶ 0.307[2], at 3094–98 (2d ed. 1982). In *Hall* the Illinois Supreme Court seems to have approved the use of evidence of gross income because of the weight of authority from other jurisdictions (aside from its mistaken view of federal law), rather than for any strong policy reasons of its own. 5 Ill.2d at 149–50, 125 N.E.2d at 85. This approval has little precedential weight both because of its lack of articulated reasons and because the unanimity of authority on which it relied has eroded.

Even before *Liepelt,* at least seven jurisdictions permitted some consideration of tax consequences. *See Mosley v. United States,* 538 F.2d 555, 558–59 (4th Cir.1976) (applying North Carolina law); *Turcotte v. Ford Motor Co.,* 494 F.2d 173, 184–86 (1st Cir.1974) (applying Rhode Island law); *Runyon v. District of Columbia,* 463 F.2d 1319, 1322 (D.C.Cir.1972) (applying District of Columbia law); *Floyd v. Fruit Industries, Inc.,* 144 Conn. 659, 671–73, 136 A.2d 918, 925–26 (1957); *Adams v. Deur,* 173 N.W.2d 100, 105–06 (Iowa 1969); *Dempsey v. Thompson,* 363 Mo. 339, 344–46, 251 S.W.2d 42, 45–46 (1952) (jury instruction issue only); *Tenore v. Nu Car Carriers, Inc.,* 67 N.J. 466, 484–95, 341 A.2d 613, 623–29 (1975). *See also Abele v. Massi,* 273 A.2d 260, 260–61 (Del.1970) (recognizing net income as the true measure, but finding use of evidence of taxability impractical). Since *Liepelt,* two state supreme courts and one lower state court have expressly adopted its reasoning. *See Blanchfield v. Dennis,* 292 Md. 319, 322–26, 438 A.2d 1330, 1332–34 (1982) (jury instruction issue only); *Curtis v. Finneran,* 83 N.J. 563, 569, 417 A.2d 15, 18 (1980); *In re Eader,* 70 Ohio Misc. 17, 18–21, 434 N.E.2d 757, 759–60 (Ohio Ct.Cl.1982). Four state supreme courts and five lower state courts have expressly rejected *Liepelt. See Irwin*

v. Pacific Southwest Airlines, 133 Cal. App.3d 709, 717–18, 184 Cal.Rptr. 228, 231–33 (1982) (jury instruction issue only); *Griffin v. General Motors Corp.,* 380 Mass. 362, 403 N.E.2d 402, 406–08 (1980); *Tennis v. General Motors Corp.,* 625 S.W.2d 218, 226–28 (Mo.App.1981) (relying on exclusivity of state pattern jury instructions); *Louissaint v. Hudson Waterways Corp.,* 111 Misc.2d at 126–27, 443 N.Y.S.2d at 681 (personal injury cases only); *South v. National Railroad Passenger Corp.,* 290 N.W.2d 819, 827–28 (N.D.1980); (jury instruction issue only); *Dehn v. Prouty,* 321 N.W.2d 534, 538–39 (S.D.1982) (jury instruction issue only); *Gulf Offshore Co. v. Mobil Oil Corp.,* 628 S.W.2d 171, 172–73 (Tex.App.1982) (jury instruction issue only); *Barnette v. Doyle,* 622 P.2d 1349, 1365–67 (Wyo.1981) (jury instruction issue only). Because the authorities are now split, we cannot assume that the Illinois Supreme Court would be content to follow its dictum based on the then-unanimous state rule. Instead, we must consult all of the available data that the Illinois court would consider in reaching a decision on the issue. *See West v. A.T. & T.,* 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940); *Huff v. White Motor Corp.,* 565 F.2d 104, 106 (7th Cir.1977).

■ One possible source of state law is the opinion of an intermediate state court. *See West v. A.T. & T.,* 311 U.S. at 237, 61 S.Ct. at 183. One pre-*Liepelt* Illinois appellate case has said that *Hall* does not control whether evidence of net income is admissible in an action under the Wrongful Death Act, but held that the admissibility issue had not been preserved for appeal. *Peluso v. Singer General Precision, Inc.,* 47 Ill. App.3d 842, 853–54, 8 Ill.Dec. 152, 161, 365 N.E.2d 390, 399 (1977). A concurring opinion in the same case found that the issue had been preserved, that no Illinois precedent existed, and that Illinois would follow the rule later adopted in *Liepelt,* citing much of the same evidence on which the Supreme Court was to rely. *Id.* at 856–59, 8 Ill.Dec. at 163–65, 365 N.E.2d at 401–03. Although this evidence of the Illinois Supreme Court's view would not be compelling if other data tended the other way, it

confirms our view of *Hall*'s lack of precedential force and indicates how an Illinois court might fill that void.

The manner in which Illinois courts have expressed the measure of damages in wrongful death cases supports the view that lost income should be reduced by the amount it would have been taxed. The Illinois Wrongful Death Act, Ill.Rev.Stat. ch. 70, ¶ 2 (1981), provides that "fair and just compensation with reference to the pecuniary injuries resulting from [the] death" is the amount due to the survivor. The Illinois Supreme Court has interpreted this statute to permit recovery only of the amount the survivor would have received from the decedent but for the death. In *Elliott v. Willis,* 92 Ill.2d 530, 540–51, 65 Ill.Dec. 852, 857–58, 442 N.E.2d 163, 168–69 (1982), it held:

> The purpose of the Wrongful Death Act is to compensate the surviving spouse and next of kin for the pecuniary losses sustained due to the decedent's death.... It is intended to provide the surviving spouse the benefits that would have been received from the continued life of the decedent....
>
> . . . .
>
> ... The test is a measurement of benefits of pecuniary value that the decedent might have been expected to contribute to the surviving spouse and children had the deceased lived.

*See also Graul v. Adrian,* 32 Ill.2d 345, 346, 205 N.E.2d 444, 445 (1965); *Welch v. Davis,* 410 Ill. 130, 133, 101 N.E.2d 547, 549 (1951); *Robertson v. White,* 11 Ill.App.2d 177, 181, 136 N.E.2d 550, 553 (1956); *McClure v. Lence,* 345 Ill.App. 158, 164, 102 N.E.2d 546, 550 (1952); *Paul v. Garman,* 310 Ill.App. 447, 463–64, 34 N.E.2d 884, 891 (1941). As *Liepelt,* 444 U.S. at 493, 100 S.Ct. at 757, and *Peluso,* 47 Ill.App.3d at 857, 8 Ill.Dec. at 164, 365 N.E.2d at 402 (Sullivan, J., concurring), have pointed out, the amount that the survivor would have expected to receive could not include the amount that would have been paid in taxes. *See also Cox v. Northwest Airlines, Inc.,* 379 F.2d 893, 896 (7th Cir.1967).

■ We do not hesitate to conclude that Illinois courts would admit tax evidence to reach this abstract measure, because they are not unfamiliar with similar economic adjustments of damage awards. It is permissible in Illinois to introduce mortality tables, *Avance v. Thompson,* 387 Ill. 77, 83–84, 55 N.E.2d 57, 60, *cert. denied,* 323 U.S. 753, 65 S.Ct. 82, 89 L.Ed. 603 (1944) (action under FELA, but prior to the distinction between state and federal rules for FELA cases); *American National Bank & Trust Co. v. Bourland,* 65 Ill.App.3d 977, 980, 22 Ill.Dec. 625, 627, 382 N.E.2d 1380, 1382 (1978), and to introduce evidence to enable the jury to reduce awards for future losses to present value, *see Allendorf v. Elgin, Joliet & Eastern Railway,* 8 Ill.2d 164, 178, 133 N.E.2d 288, 296 (FELA action), *cert. denied,* 352 U.S. 833, 77 S.Ct. 49, 1 L.Ed.2d 53 (1956); *see also* Illinois Supreme Court Committee on Jury Instructions, *Illinois Pattern Jury Instructions: Civil* § 34.-03 (1971); to deduct from the lost gross earnings the decedent's lost personal expenditures, *see Scully v. Otis Elevator Co.,* 2 Ill.App.3d 185, 200, 275 N.E.2d 905, 915 (1971) (Structural Work Act case), and perhaps to correct the portion of the award allocable to future losses for the effects of inflation, *see Raines v. New York Central Railroad,* 51 Ill.2d at 435–37, 283 N.E.2d at 234–35; *O'Brien v. Chicago & North Western Railway,* 329 Ill.App. 382, 402, 68 N.E.2d 638, 648 (1946). Moreover, there are some indications that income tax adjustments are made in practice in Illinois courts. *See Baird v. Chicago, Burlington & Quincy Railroad,* 63 Ill.2d 463, 468, 349 N.E.2d 413, 415 (1976); *Allendorf v. Elgin,*

*Joliet & Eastern Railway,* 8 Ill.2d at 181, 133 N.E.2d at 296. Because this is the kind of evidence that Illinois courts would, or in fact do, entertain in measuring damages, we may predict that this is the course the Illinois Supreme Court would endorse were the issue presented to it. Indeed, because Illinois so scrupulously adjusts its damage awards to make them compensatory, *see* Illinois Supreme Court Committee on Jury Instructions, *Illinois Pattern Jury Instructions: Civil* § 31.04 (1971),[6] failure to adjust the award for taxes might render is partially punitive, and it is the law of Illinois as well as the law of this case that punitive damages are unavailable in wrongful death cases. *See In re Air Crash Disaster,* 644 F.2d 594, 605 (7th Cir.1981).

Our conclusion is not altered by the fact that in *Elliott v. Willis,* 92 Ill.2d at 541, 65 Ill.Dec. at 858, 442 N.E.2d at 169, the Illinois Supreme Court refused to permit adjustment of a wrongful death award to reflect the lost investment earnings of estate funds used to pay premature estate taxes, even though that money would have been available to benefit the survivors but for the wrongful death. Although the court's reasoning is not clear, the juxtaposition of its formulation of the abstract measure of damages, quoted above, and its decision not to allow the adjustment suggests that it considered the adjustment too inconsequential to bother with, perhaps because of the uncertainty of the calculations on which the adjustment would depend. Even *Liepelt* recognized that some adjustments could be refused if their bases became too attenuated. *See* 444 U.S. at 494 n. 7, 100 S.Ct. at 758 n. 7. The standard for such a

---

**6.** The pattern jury instructions recommend that in a case of wrongful death of an adult leaving lineal survivors the jury be instructed that:

[i]n determining pecuniary loss ... you may consider what benefits of pecuniary value, including money, goods, and services the decedent might reasonably have been expected to contribute to the [survivor] had the decedent lived, bearing in mind the following factors concerning the decedent:

1. What he customarily contributed in the past;

2. What he earned or what he was likely to have earned in the future;

3. What he spent for customary personal expenses [and other deductions];

4. What instruction, moral training, and superintendence of education he might reasonably have been expected to give his [child] [children] had he lived;

5. His age;

6. His health;

7. His habits of industry, sobriety, and thrift;

8. His occupation.

refusal is supplied by Fed.R.Evid. 403, *see id.*, which, as we have shown above, would displace any similar state rule in federal court. We conclude that *Elliott*'s holding should not bind the district court in this case.

## II. Jury Instruction on Nontaxability of Award

■ It is clear that under current Illinois practice it is proper to refuse to instruct a jury that a damage award in a wrongful death case (by whatever means it is computed) will not be subject to taxation. In *Hall v. Chicago & North Western Railway*, 5 Ill.2d at 148–53, 125 N.E.2d at 84–86, the Illinois Supreme Court held that a new trial was proper in a personal-injury case under FELA because of the defense counsel's remarks in closing argument that any award would be nontaxable. It reasoned that, even if the argument correctly stated the law, it was improper because the jury was instructed on the proper measure of damages and should be presumed to follow instructions; because the possible profusion of similar cautionary instructions would be undesirable; and because, if an instruction on nontaxability were given, the jury might deprive the recipient of a tax benefit intended by Congress, by decreasing the award. *Id.* at 150–52, 125 N.E.2d at 86. In a subsequent FELA personal-injury case the Illinois Supreme Court reaffirmed its approach in *Hall*, quoting the third rationale. *Raines v. New York Central Railroad*, 51 Ill.2d at 430, 283 N.E.2d at 232. Although *Hall* and *Raines* were FELA cases, it is likely that their reasoning would survive their specific reversal by *Liepelt*, because the court decided them on the basis of general Illinois jurisprudence rather than on principles peculiar to FELA cases. Several post-*Liepelt* Illinois appellate decisions confirm the vitality of *Hall* and *Raines* in actions based on state law. *Edwards v. Kelsey-Hayes Co.*, 108 Ill.App.3d 1205, 68 Ill.Dec. 581, 446 N.E.2d 315 (Ill.App.1982); *Johnson v. Hoover Water Well Service, Inc.*, 108 Ill.App.3d 994, 1009, 64 Ill.Dec. 476, 486–87, 439 N.E.2d 1284, 1294–95 (1982); *Christou v. Arlington Park-Washington Park Race Tracks Corp.*, 104 Ill. App.3d 257, 262, 60 Ill.Dec. 21, 26, 432 N.E.2d 920, 925 (1982); *Newlin v. Foresman*, 103 Ill.App.3d 1038, 1046–47, 59 Ill.Dec. 735, 741–42, 432 N.E.2d 319, 325–26 (1982) (wrongful death action). These cases are powerful evidence of the content of Illinois law. *See West v. A.T. & T.*, 311 U.S. at 237, 61 S.Ct. at 183.

■ Ordinarily in diversity cases state law determines the content of jury instructions and federal law governs only the manner in which instructions are requested and given. *See* 5A J. Moore & J. Lucas, *Federal Practice* ¶ 51.02–1 (2d ed. 1982); Fed.R. Civ.P. 51. This rule is rooted in *Erie* principles insofar as the jury instruction expounds substantive state law. That rationale may be lacking in the present case, however, because Illinois law refuses the instruction altogether rather than defining its content, and in any case the substantive law to which the instruction, if given, relates is the Internal Revenue Code. Unless Illinois has a substantive interest in refusing the instruction, therefore, perhaps federal law should control.

At first glance, Illinois does appear to have such a substantive interest. In *Hall* the Illinois Supreme Court did not merely endorse the refusal to inform the jury of the nontaxability of an award; it ordered a new trial because it considered the possibility that the jury acted on the information, even if the information was truthful, a positive evil. 5 Ill.2d at 151–53, 125 N.E.2d at 86. It therefore seems that the court regarded the possibility of a windfall, beyond the stated measure of damages, as part of the substantive right.

■ On closer inspection, however, it appears that the basis for the possible windfall was federal tax law, as interpreted by the Illinois court: *Hall* feared that the instruction might undo a tax benefit intended by Congress, by impelling the jury to reduce the award by the amount of the tax exemption. 5 Ill.2d at 152, 125 N.E.2d at 86, quoted in *Raines*, 51 Ill.2d at 430, 283 N.E.2d at 232. But this reasoning, as we have already noted twice, is based on a

misapprehension of federal law. *Liepelt* interprets federal law to create no positive tax benefit. 444 U.S. at 496 n. 10, 100 S.Ct. at 758 n. 10. Because plaintiffs are not entitled under state or federal law to receive a bonus beyond compensatory damages, so informing the jury is harmless at most.[7]

*Hall*'s other two rationales for refusing to instruct the jury on this issue—that it is unnecessary if the measure of damages is made clear, and that it would invite a flood of cautionary instructions—should not bind a federal court because they speak to matters of court administration, about which the federal courts have independent competence. Some state procedures, of course, are so "outcome-determinative" as to be inseparable from the substantive law, and must be applied in diversity cases by federal courts. *See Byrd v. Blue Ridge Electric Cooperative, Inc.,* 356 U.S. 525, 535–36, 78 S.Ct. 893, 899–900, 2 L.Ed.2d 953 (1958). We would be faced with an ironic quandary if we were compelled to apply the outcome-determinativeness test in this case: if we adopt the state's assumption that juries will follow instructions on the measure of damages, *Hall,* 5 Ill.2d at 150–51, 125 N.E.2d at 85–86, giving the tax instruction will be superfluous and not outcome-determinative; but if we adopt *Liepelt*'s assumption that juries are likely to inflate awards absent the tax instruction, 444 U.S. at 497, 100 S.Ct. at 759, not giving the instruction will affect the outcome. State rules thus point to application of federal law, and federal

rules to state law. But the outcome-determinativeness test is inappropriate here, because we have already determined that increasing awards beyond compensation would be an improper outcome under state law. The district court therefore is free to give the tax instruction despite contrary state procedure.[8]

We conclude that Illinois's substantive measure of damages is the same as the measure under FELA examined in *Liepelt,* and that the district court may admit all evidence relevant to that measure, subject to the considerations of Fed.R.Evid. 403.[9] We also conclude that, although Illinois courts very likely would not instruct the jury that any damages it awarded would be nontaxable, the Illinois practice does not bind the federal courts under *Erie* because, so far as we can determine from the cases, Illinois's concerns are either procedural or based on a mistaken view of federal law. For these reasons the judgment of the district court is reversed. The parties shall bear their own costs.

---

7. Our conclusion would be different if Illinois interpreted its own substantive law to include a right to such a possible bonus. It is only because the result in *Hall* seems to depend on its view of the requirements of federal law (a characterization reinforced by the Illinois Supreme Court's abstract formulation of the measure of damages in wrongful death cases) that we find it not controlling. *Cf. Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 1395, 59 L.Ed.2d 660 (1979) (when state ground for decision is dependent on federal law, a federal question is presented); *Zacchini v. Scripps-Howard Broadcasting Co.,* 433 U.S. 562, 568, 97 S.Ct. 2849, 2853, 53 L.Ed.2d 965 (1977) (same).

8. This case's posture distinguishes it from *Croce v. Bromley Corp.,* 623 F.2d at 1097, in which the Fifth Circuit refused to order a new

trial for failure to give a tax instruction, because there was no indication that the verdict had been inflated. Here, we review the rules for a future trial, not a completed one.

9. Such tax evidence need not be limited to the amount of tax the decedent would have paid on lost income. Because damage awards are reduced to present value with the expectation that by investment they will replace a lost future income stream, and because the interest so earned is taxable as income, *see In re Air Crash Disaster,* 526 F.Supp. at 227 n. 1, it may be necessary to consider evidence on the amount by which the damage award should be increased to account for this tax. *See Liepelt,* 444 U.S. at 495, 100 S.Ct. at 758.