**Lora LUX, Widow and Personal Representative of Walter H. Lux, Deceased, Plaintiff,**

v.

**McDONNELL DOUGLAS CORPORATION, Defendant.**

No. 79 C 2487.

United States District Court, N.D.Illinois, E.D.

Dec. 11, 1984.

Philip Howard, William J. Harte, Chicago, Ill., for plaintiff.

Norman J. Barry, Daniel Cummings, Rothschild, Barry & Myers, Chicago, Ill., for defendant.

## ORDER

BUA, District Judge.

Before the Court is defendant's motion for a new trial. For the reasons stated herein, defendant's motion for a new trial will be denied if plaintiff agrees to remit $1,000,000 of the jury's $4,150,000 verdict. Should plaintiff refuse remittur, defendant's motion for a new trial will be granted.

## I. FACTS

This diversity case was brought by Lora Lux, the widow of Walter Lux and personal representative of his estate, under the Arizona Wrongful Death Act, A.R.S. § 12–613.[1] On May 25, 1979, Walter Lux was killed while piloting American Airlines Flight #191, which crashed shortly after takeoff at Chicago's O'Hare International Airport. The sole defendant in this case is the McDonnell Douglas Corporation, manufacturer of the American Airlines' DC–10 aircraft. Since McDonnell Douglas agreed to not contest liability, the case was tried to the jury on the issue of compensatory damages only. On February 28, 1984, the jury returned a verdict in favor of plaintiff and against defendant and assessed damages in the amount of $4,150,000. The jury allocated $4,000,000 in damages to Lora Lux and $150,000 in damages to Michael Lux, Walter Lux' son.

In its motion for a new trial pursuant to Fed.R.Civ.P. 59, McDonnell Douglas advances several reasons this Court should grant a new trial. First, defendant argues that plaintiff's argument to the jury was improper and prejudicial; second, defendant argues that the Court erred when it refused to instruct the jury that its award was not subject to taxation; third, defendant argues that the Court erred by excluding evidence of the effect of taxation on decedent's income; fourth, defendant argues that evidence relating to insurance proceeds was improperly excluded from the jury; fifth, defendant argues that the jury was not properly instructed; sixth, defendant argues that the Court erred by admitting twelve irrelevant and cumulative photographs of Walter Lux and his family; and finally, defendant argues that the evidence is insufficient to support a verdict of $4.15 million dollars.

On the date of the accident, Walter Lux was 52 years old; Lora Lux was 49 years old, and their only son, Michael, was 22 years old. Walter and Lora Lux had been married 24 years. Walter Lux' income from American Airlines as a captain pilot was $78,954 in 1978. In addition to his annual income, Walter Lux enjoyed various fringe benefits from his employment with American Airlines. These benefits includ-

---

1. A.R.S. § 12–613 reads as follows:

 In an action for wrongful death, the jury shall give such damages as it deems fair and just with reference to the injury resulting from the death to the surviving parties who may be entitled to recover, and also having regard to the mitigating or aggravating circumstances attending the wrongful act, neglect or default. The amount recovered in such action shall not be subject to debts or liabilities of the deceased, unless the action is brought on behalf of the decedent's estate.

ed life insurance, medical and dental insurance, and pension benefits. At trial, plaintiff claimed a total of $1,589,930 in economic loss, of which approximately $1,000,000 represented lost income. Defendant, on the other hand, argued that any amount in excess of $1,000,000 for economic loss would be unfair and excessive. *See* Tr. 525.

■ Under Arizona law, Lora Lux' non-economic loss includes her "loss of love, affection, companionship, consortium, and her personal anguish, sorrow, suffering and pain, and shock which resulted from her husband's death." *Southern Pacific Transportation Co. v. Lueck*, 111 Ariz. 560, 535 P.2d 599, 611 (1975). Lora Lux testified as follows regarding her noneconomic damages.

Walter and Lora Lux had been married 24 years at the time of the accident. Walter was killed six months before their 25th anniversary. The Luxes had bought a summer home in Wisconsin and later remodeled the home into a year-round residence. Walter performed all of the electrical and plumbing work on the house. The Lux family lived year-round in the Wisconsin residence from 1965 until 1972. In 1972, they moved to Phoenix, Arizona. After 1972, the Luxes continued to use the Wisconsin home for vacations and holidays.

On the morning of Walter's death, Lora accompanied her husband to work at the airport in Phoenix. Walter was scheduled to pilot a plane from Phoenix to Chicago. Lora understood that Walter would fly to Chicago and then travel to the Wisconsin home to spend the Memorial Day weekend putting up wallpaper and carpeting the house. At about 1:00 p.m. that afternoon, Lora received a call at work from Walter's sister. Walter's sister informed Lora that a plane had crashed in Chicago. Lora responded that Walter was safe because he was on his way to the Wisconsin home. Unknown to Lora, however, Walter had been reassigned at the last minute to pilot Flight # 191 from Chicago to Los Angeles. Minutes after Lora spoke with Walter's sister, a friend called and told Lora that

American Airlines had just informed her that Walter was the pilot on the airline which crashed. Lora immediately went home and was met by a sales representative of American Airlines.

At the house, Lora took a tranquilizer and watched reports of the crash on the television. Michael soon arrived and the sales representative then drove Lora and Michael to the Phoenix airport. Michael and Lora flew to Chicago, arriving at 6:30 a.m. on Saturday. They were met by the chief pilot for American Airlines and immediately they were introduced to the pilot originally scheduled to pilot Flight # 191. Later that morning, Lora and Michael traveled to their Wisconsin home.

In Wisconsin, Lora made plans for a memorial service for Walter because she understood that Walter's body had been burned in the crash. The evening before the scheduled service, however, the funeral director informed Lora that American Airlines had sent Walter's remains for burial. Upon such short notice, Lora decided to have Walter's remains cremated.

About one month after the funeral, Lora returned to her work in Phoenix as a realtor. During this period Lora became depressed and began grinding her teeth. Lora's dentist first prescribed braces for her teeth and later surgery was required. After the surgery, however, Lora continued to grind her teeth. Lora was also treated by a psychiatrist for about one year. The psychiatrist prescribed tranquilizers in an effort to control Lora's depression.

On one occasion after the accident, Lora was flying from Chicago to Phoenix and was seated next to the Chicago fireman who first arrived at the scene of the crash. Not knowing Lora's identity, the fireman mentioned that he was the first fireman at the crash and that he "found the captain's body." On several occasions since the accident, Lora has been reminded of the crash by news reports and conversations with friends and acquaintances.

Since the accident, Lora has incurred about $13,000 in dental expenses and $1,900 in psychiatric expenses. She also has incurred the expense of hiring outside help for maintaining the Wisconsin house.

## II. DISCUSSION

### A. *Improper Argument to the Jury*

Defendant argues that a new trial is warranted because the Court "repeatedly throughout the trial instructed the jury or permitted plaintiff to argue that defendant's liability for the accident was at issue, when in fact defendant had only stipulated not to contest liability for compensatory damages." Defendant's Motion at ¶ 1. This argument, however, is without merit.

■ Before trial, defendant amended its Answer to state: "[Defendant] does not contest liability for compensatory damages in this action." Defendant's Amendment to Answer, filed December 8, 1981. In addition, at Attachment G of the Final Pretrial Order, defendant states: "The defendant has abandoned and *waives its denial of liability* for compensatory damages and does not contest such liability." (emphasis supplied) Therefore, to the extent that plaintiff's counsel, or the Court in plaintiff's Instruction No. 1, referred to defendant's admission of liability, no error occurred. In fact, defendant's counsel repeatedly informed the jury that his client has admitted liability in this case. *See, e.g.,* Tr. 28 ("... we acknowledge responsibility to Mrs. Lux....") (defendant's opening; Tr. 473 ("There has been an admission of liability.") (Defendant's closing argument).

Defendant also argues that plaintiff's counsel improperly argued to the jury that defendant should punish defendant for its conduct and that the jury should return a punitive verdict. Defendant refers primarily to the following statements made by plaintiff's counsel during closing arguments:

The nature of this lawsuit is what I would call a consumer protection type case.

\* \* \* \* \* \*

... the defendant has now admitted their [sic] responsibility for having caused this accident.

\* \* \* \* \* \*

... McDonnell Douglas was at fault in bringing about the crash....

\* \* \* \* \* \*

His dad [Walter Lux] was killed because of their [McDonnell Douglas] responsibility.

\* \* \* \* \* \*

Walter Lux went, you know, because of the responsibility of this company, and that's why he went, and not as he [defendant's attorney] said, "Oh, people have heart attacks," or anything. We're here because of the responsibility of McDonnell Douglas in the manufacture of this aircraft. That's why we're here.

\* \* \* \* \* \*

It is bad enough that they are responsible for the death of her husband.... Tr. 473–74; 475; 497; 511; 533; 540. Defendant theorizes that these statements aroused the passions and prejudices of the jurors and resulted in "at least" an extra $2.5 million being awarded in this case.

■ Having reviewed the record in its entirety, however, the Court is convinced that the jury's award was not the result of passion or prejudice. With the exception of the "consumer protection" statement, plaintiff's argument to the jury simply stated that defendant had admitted liability for damages, a fact which defendant stipulated before trial. The jury was properly instructed on the issue of damages and was further instructed that neither sympathy nor prejudice should influence its decision. Tr. 545. Regarding the "consumer protection" statement, defendant was not prejudiced by this statement even assuming the statement constitutes an improper argument. Defendant's counsel had ample opportunity to rebut any improper inference

the jury might have made from plaintiff's statement. In fact, during defendant's closing argument, defendant's attorney stressed:

Now, there is no issue of consumer protection. That was thrown out to you, ladies and gentlemen, in a most unfair fashion to make you think that by bringing back a large and unfair verdict, this would protect the consumers. That isn't what this case is about. The protection of consumers, if, in fact, McDonnell Douglas had violated the FAA Regulations, that would have been the FAA's problem, and they have tremendous ways of punishing. And that is what [plaintiff's] counsel asked you to do, quietly and insidiously, but he asked you to protect the public, and that is not what we are here for.

Tr. 513.

Defendant's reliance upon *Gonzalez v. Volvo of American Corp.*, 734 F.2d 1221, 1222 (7th Cir.1984), is misplaced. Plaintiff's argument to the jury comes nowhere close to the inflammatory and prejudicial statements in *Gonzalez*, which required the Seventh Circuit to reverse for a new trial. In this case, no suggestion of criminality was made against McDonnell Douglas, no references to defendant's wealth were made, and plaintiff's counsel did not personally comment on the credibility of witnesses. Since the facts of *Gonzalez* are clearly distinguishable from this case, *Gonzalez* does not compel a new trial here.

### B. *Taxation Instruction*

Before trial, the Court granted plaintiff's motion *in limine* and refused to instruct the jury that its award would not be subject to taxation. *Lux v. McDonnell Douglas*, 579 F.Supp. 1036 (N.D.Ill.1984).[2] Defendant argues that the Seventh Circuit's decision in *In Re Air Crash Near Chicago, Illinois*, 701 F.2d 1189 (7th Cir.1983) ("*Air Crash*"), mandates the cautionary instruction. In *Air Crash*, the Seventh Circuit

held that a federal court sitting in Illinois and applying the Illinois Wrongful Death Act in a diversity suit should instruct the jury that its award would not be subject to taxation. The court reasoned that since the Illinois practice of refusing the instruction was "either procedural or based on a mistaken view of federal law," the federal cautionary instruction should be given. *Air Crash, supra,* 701 F.2d at 1200.

 This Court is convinced that the Arizona courts, unlike the courts of Illinois, have clearly expressed a "substantive interest" in this issue. The Court, therefore, adheres to its original view articulated before trial:

This case, however, is distinguishable from the Seventh Circuit's comments in *Air Crash.* Arizona's concerns are neither procedural nor based on a mistaken view of federal law. In *Mitchell v. Emblade*, 80 Ariz. 398, 298 P.2d 1034 (1956), *opinion modified on other grounds,* 81 Ariz. 121, 301 P.2d 1032 (1956), the Arizona Supreme Court clearly held that the effect of income taxes on an award has "no part" in the correct measure of damages under Arizona law. *Id.* at 1038. This view remains the law in Arizona today. *Young v. Environmental Air Products, Inc.,* 136 Ariz. 206, 665 P.2d 88, 95 (Ariz.Ct.App.1982), *modified on other grounds,* 136 Ariz. 158, 665 P.2d 40 (Ariz.1983). Unlike the Illinois courts, the Supreme Court of Arizona has clearly expressed a "substantive" interest in this issue. Having reviewed the Arizona cases, this Court holds that Arizona's interest in this issue is "so closely linked with [Arizona's] view of the measure of damages," that it binds this Court, under the *Erie* doctrine, to follow the Arizona rule. *See Air Crash,* 701 F.2d at 1194. The rule against admitting evidence concerning the income tax consequences of a judgment, as viewed by the Arizona courts, is "so 'outcome determinative' as

---

2. To the extent that the Court's February 22, 1984 Order combined the taxation instruction issue with the effect of taxation upon decedent's lost income issue (see Section C *infra* ), the

Court clarified any confusion at trial. *See* Tr. 143–154. In any event, this opinion will treat the two issues separately.

to be inseparable from the substantive law, and must be applied in diversity cases by federal courts." *Id.* at 1200. *Lux v. McDonnell Douglas,* 579 F.Supp. 1036, 1036–37 (N.D.Ill.1984). In summary, the Court correctly refused to instruct the jury that its award would not be subject to taxation under Arizona law.

## C. Evidence Relating to the Effect of Taxation Upon Decedent's Lost Income

Defendant argues that this Court erred by not permitting defendant to introduce evidence of the effect of taxation upon decedent's lost income. Defendant claims that the verdict is excessive by approximately $500,000 in pecuniary losses due to the jury's inability to consider the effect of taxation upon the decedent's lost income. As the Ninth Circuit recently commented regarding this issue, "[t]he law of Arizona on the incidence of income taxes in tort damage awards is not as clear as it might be." *Felder v. United States,* 543 F.2d 657, 666 (9th Cir.1976).

In *Air Crash,* the Seventh Circuit predicted that the Illinois Supreme Court, if presented with the issue, would hold that a decedent's lost income should be reduced by the amount it would have been taxed. *Air Crash, supra,* 701 F.2d at 1197–99. In this case, defendant's argument that the jury should have been allowed to consider evidence of taxation presupposes a similar prediction of Arizona law by this Court. Reviewing the Arizona precedents, however, no such prediction can be made.

In *Mitchell v. Emblade,* 80 Ariz. 398, 298 P.2d 1034 (1956), the Arizona Supreme Court held that a jury should not be instructed that an award for personal injuries is not subject to income taxes. More

recently, the Arizona Court of Appeals extended *Mitchell* and held, also in a personal injury case, that "gross pay and not net or 'take home' pay is the proper basis for computing loss of future earnings, and that evidence of income taxes or deductions should not be allowed for the purpose of reducing the amount of damages." *Seely v. McEvers,* 115 Ariz. 171, 564 P.2d 394, 397 (Ariz.Ct.App.1977). The *Seely* court referred to the "gross pay" measure of damages as the "majority rule," a characterization which the editors of the American Law Reports apparently agree. *See* 16 A.L.R. 4th 589, 605–16 (1982 and 1984 Supp.).[3] Since the rationale cited by the *Seely* court for the "gross pay" measure of damages in personal injury cases applies with equal force to wrongful death cases, this Court predicts that the Arizona Supreme Court, if faced with the issue, would extend the *Seely* "gross pay" measure of damages to pecuniary damage awards in wrongful death cases. In fact, federal courts construing the Arizona Wrongful Death Act have applied the *Seely* "gross pay" measure of damages for a considerable time. *See, e.g., McCauley v. United States,* 470 F.2d 137, 139 (9th Cir.1972); *United States v. Becker,* 378 F.2d 319, 324 (9th Cir.1967). In summary, defendant's argument that this Court erred by excluding evidence of taxation on decedent's future income is without merit under Arizona law.[4]

## D. Excessiveness of the Verdict

Plaintiff does not deny that the $4.15 million award in this case far exceeds any prior award under the Arizona Wrongful Death Act. In fact, the Court's research has failed to discover any reported decision awarding wrongful death compensatory damages under the Arizona Act in excess

---

**3.** The fourteen jurisdictions listed which exclude evidence of taxation upon lost income are: Alaska, Arizona, Arkansas, California, Colorado, Delaware, Maryland, Pennsylvania, Texas, Virginia, Virgin Islands, Washington, West Virginia, and Wisconsin. Only eight states are listed which admit such evidence: Connecticut, District of Columbia, Illinois (as predicted by the Seventh Circuit), Iowa, Nebraska, New Jersey,

New York, and Rhode Island. In Louisiana, the appellate courts have split on the issue. 16 A.L.R. 4th 589, 605–16 (1982 and 1984 Supp.).

**4.** For the above reasons, the Court also rejects defendant's argument that it was error to exclude the effect of taxation on decedent's post-retirement income.

of $2,000,000. Accordingly, the Court is required to consider whether the award of $4.15 million, under the facts of this case, is excessive.

 In reviewing a jury verdict for damages to determine whether it is excessive, the Court must defer to the judgment of the jury unless the award is "monstrously excessive" or "so large as to shock the conscience of the court." *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1275 (7th Cir.1983). One factor the Court may consider in determining whether an award is excessive is whether the award is "out of line compared to other awards in similar cases." *Levka v. City of Chicago*, 748 F.2d 421, 425 (7th Cir.1984). Should the Court conclude that an award is excessive under this standard, the Court may condition the denial of a new trial on the plaintiff's agreement to remit part of the award. *See Levka, supra,* 748 F.2d 421; *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1275 (7th Cir.1983); *Huff v. White Motor Corp.*, 609 F.2d 286, 296–97 (7th Cir.1979); *Dorin v. Equitable Life Assurance Society*, 382 F.2d 73 (7th Cir.1967). The Court, however, must grant a new trial unconditionally if the excessive verdict is the result of passion, prejudice or caprice. *Dorin, supra,* 382 F.2d at 77. *See also Gulf Coast Building & Construction Trades Council v. F.R. Hoar & Son, Inc.*, 370 F.2d 746, 749 (5th Cir.1967); *Gibbs v. United Mine Workers*, 343 F.2d 609, 616–17 (6th Cir.1965), *rev'd on other grounds*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

 Having reviewed the record, arguments of counsel at trial, and the Court's instructions to the jury, the Court is convinced that the jury's award is not the result of passion, prejudice or caprice. The jury was instructed properly as to the scope of damages which it could award, and was further instructed that neither sympathy nor prejudice should influence its verdict.

In comparing the $4.15 million award in this case, however, with awards in other Arizona wrongful death cases, this award stands out as excessive. This Court's research indicates that the highest reported wrongful death verdict for compensatory damages upheld on appeal in Arizona is a $2,000,000 verdict for the wrongful death of a husband with two children. *Southern Pacific Transportation Co. v. Lueck*, 111 Ariz. 560, 535 P.2d 599 (1975). Other reported decisions reflect even smaller awards. *See, e.g., Grant v. Arizona Public Service Co.*, 133 Ariz. 434, 652 P.2d 507 (1982) ($1,250,000 compensatory award for wrongful death of husband); *Fulton v. Johannsen*, 3 Ariz.App. 562, 416 P.2d 983 (1966) ($200,000 compensatory award for wrongful death of 29-year-old husband); *Merritt-Chapman & Scott Corp. v. Frazier*, 289 F.2d 849 (9th Cir.1961) ($200,000 compensatory award for wrongful death of husband); *Welch v. McClure*, 123 Ariz. 161, 598 P.2d 980 (1979) ($125,000 for compensatory award for wrongful death of husband); *City of Phoenix v. Whiting*, 10 Ariz.App. 189, 457 P.2d 729 (1969) ($100,000 compensatory award for wrongful death of 29-year-old wife).

 In this case, Walter Lux was 52 years old at the time of his death. Mrs. Lux testified extensively as to her personal anguish, grief, sorrow and anxiety. *See* discussion *supra,* at 100–102. As a result of her husband's death, Mrs. Lux began grinding her teeth (which caused teeth and jaw damage) and she required psychiatric treatment. The evidence of pecuniary damages amounted to approximately $1.6 million. The Court is convinced, however, that the evidence does not support a damage award of this magnitude. Considering the evidence at trial and other awards in similar cases, the Court is of the opinion that a remittitur of $1,000,000 is appropriate. A compensatory award of $3,150,000 comports with verdicts returned in similar cases and compensates plaintiff for the damages she is entitled to recover under Arizona law.[5]

5. Defendant's remaining arguments are without merit. Evidence relating to plaintiff's insurance proceeds was inadmissible under Fed.R.Evid. 403. The twelve photographs of decedent and

### III. CONCLUSION

Defendant's motion for a new trial will be denied if plaintiff agrees to remittitur of $1,000,000 within 30 days of entry of this order. Should plaintiff agree to remittitur, judgment will be entered in favor of plaintiff and against defendant in the amount of $3,150,000 ($3,000,000 allocated for Lora Lux; $150,000 allocated for Michael Lux). Should plaintiff refuse remittitur, defendant's motion for a new trial will be granted.

IT IS SO ORDERED.

his family were properly admitted. *See Waldron v. Hardwick*, 406 F.2d 86 (7th Cir.1979). Finally, the jury was properly instructed as to the measure of damages under Arizona law. *See Southern Pacific Transportation Co. v. Lueck*, 111 Ariz. 560, 535 P.2d 599 (1975); *Fluor Corp. v. Sykes*, 3 Ariz.App. 211, 413 P.2d 270 (1966).